THOMAS LARKIN, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

In order to give the court jurisdiction to try an offense committed on board a boat upon a canal, or in respect to the cargo or lading of such boat, it is necessary, under title 4, chapter 2, part 4 of the Revised Statutes, (2 *R. S.* 727, § 44,) as amended by chapter 431 of the *Laws of* 1860, that it should be alleged in the indictment that the offense was committed "on board the boat or vessel," and that the boat or vessel, on that trip or voyage, had passed through some part of the county where the indictment was found; and also to prove both facts, upon the trial.

Where, in an indictment found and tried in Erie county, for a crime alleged to have been committed at L. in the county of Herkimer, it was charged that the crime was committed at L., on board a "canal boat which was a vessel called * * * navigating the Erie canal, as aforesaid, being a vessel, in the course of this same voyage and trip, and which had been navigated through a part of the county of Erie aforesaid, and also through the said county of Herkimer;" and it was proved, upon the trial, that the boat named was navigating the Erie canal, and in the course of that trip or voyage had passed, on such canal, through a part of Erie county; but there was no evidence, whatever, to prove that the offense charged, if any such had been committed at L., had been committed on board the canal boat, as charged; *Held* that this was sufficient to reverse a judgment of conviction, upon the ground of an entire want of jurisdiction in the court, on the facts proved, to render it, or to entertain the case, after the people had gone through with their evidence.

Where an advance was made by shippers, to a carrier of goods upon the canal, on account of the freight, in the form of a check indorsed payable to the order of M., a third person; it having been made out in that form at the carrier's request, for the express purpose of enabling him, with it, to pay a debt he owed M.; and such check was delivered by the carrier to M., accordingly; *it was held*

Larkin *v*. The People.

that the persons making the advance must be deemed to have assented, by the very terms of the check by which it was made, that M., and not the carrier or any one else, should order as to the disposition of it; and that for such delivery of the check to M. no indictment would lie against the carrier, under the provisions of the Revised Statutes relative to embezzlement, &c., by carriers, (2 *R. S.* 679, § 62,) as amended by the act of 1862. (*Laws of* 1862, *ch.* 729.)

WRIT of error to the Erie county court of sessions. The plaintiff in error was tried before the court of sessions in and for the county of Erie, in March, 1870, upon an indictment for embezzlement, under the following provisions of chapter 729 of the laws of 1865, to wit: " And if any carrier or other person who shall have received any advance for the cost or price of freight upon any property received, or to be received for transportation or carriage, or who shall have received any advance for the payment of tolls, or for the payment of any other public or private charge upon the right of transit, shall, without the assent of the person making such advance, convert or apply the said advance to his own use, or to any other purpose than that for which said advance was made, or shall secrete the same, or shall refuse to apply the same to the purpose for which he received the same, shall, upon conviction thereof, be deemed guilty of embezzlement, and shall be punished in the manner prescribed by law, for feloniously stealing property of the value of the advance so converted or applied, or secreted."

The indictment charged that on the 25th day of September, 1868, Larkin was a carrier and master of the canal boat *R. C. Palmer*, engaged in navigating the Erie canal. That on that day he received from James M. Matthews and Rufus H. Beckwith, a cargo of corn, to be transported from Buffalo to New York city, and as an advance upon the price of freight thereof, they advanced to him, and he received from them, the sum of $330, (the first count alleging the sum to have been in checks, and the second count, in currency,) " for the purpose of being applied to the pay-

ment of the current expenses of navigating said canal boat with said cargo, from said city of Buffalo to New York city; and that he did thereafter, in the course of the trip, at Little Falls, in Herkimer county, convert the money to his own use, and refuse to apply the same to the purpose for which he received the same, with intent to defraud.

In 1869 the prisoner was captain and owner of the canal boat *R. C. Palmer.* On September 25th he applied to R. H. Beckwith & Co., at Buffalo, for a cargo of corn, which was procured and loaded upon said boat, to be transported to New York, by the prisoner, for thirteen cents a bushel. Beckwith & Co. advanced within $80 of the entire freight, after deducting insurance, commission, and a prior indebtedness of the prisoner to them, by giving to the prisoner two checks on Rochester and Syracuse collectors, respectively, for tolls, and one check of $130.25, payable to bearer, and one other check for $200, payable to the order of C. Myers. The evidence was conflicting as to whether or not the prisoner said he wanted the $200 check to pay to Myers on a mortgage upon the boat. C. Myers, to whose order the $200 check was payable, held a mortgage on the boat, and lived in Rochester. The prisoner lived in Brockport. The boat was loaded with 7505 bushels corn, and left Buffalo within a day or so after it was loaded. The prisoner went with it, and at Rochester gave the $200 check to said Myers, the proceeds to be applied as payment on the said mortgage. The boat was delayed by reason of breaks in the canal, and only reached Little Falls about thirty days after leaving Buffalo, where the prisoner caused the corn to be taken from the boat, on account of said corn being hot, and afterwards refused to reload said corn unless Beckwith & Co. would pay the warehouse charges at Little Falls, and did not in fact thereafter reload said corn, nor did he return to Beckwith & Co. any part of the advances made by them, the same having been wholly expended in paying the expenses of running said

boat to Little Falls, except the said $200 check. The prisoner had notified Beckwith & Co. that he should have the corn unloaded from his boat on account of its being hot, and injuring the boat, prior to its being so removed. The corn was hot and caked to a depth of three to five feet, when unloaded from boat. After unloading, the prisoner returned with his boat to Brockport, and afterwards came to Buffalo, and was arrested on the complaint of Beckwith & Co., indicted as before stated, tried and convicted, and sentenced to one year's imprisonment at Auburn, at hard labor.

When testimony on the part of the people was closed, the counsel for the prisoner moved that the prisoner be discharged, on the grounds that there was not sufficient evidence to authorize his conviction upon the said indictment. The court denied the motion, and refused to discharge the prisoner; to which ruling and refusal the counsel for the prisoner excepted. The counsel asked the court further to rule and decide that the prosecution had failed to establish the commission of any offense by the prisoner, as alleged in said indictment. The court refused so to rule and decide, and the prisoner's counsel excepted to such refusal. The counsel for the prisoner further asked the court to rule and decide that the prosecution had failed to establish the conversion or misappropriation by the prisoner of any advance made to him for the cost or price of freight upon the corn received by him for transportation, or the application of the said advance to any other purpose than that for which the same was made, without the assent of, and with intent to defraud the persons making such advance. The court refused so to rule and decide; to which refusal the counsel for the prisoner excepted. The counsel for the prisoner further requested the court to rule and decide that no offense had been proved which the said court had jurisdiction to try. The

court refused so to rule and decide; to which refusal the counsel for the prisoner also excepted.

At the close of the evidence the court charged the jury, among other things, "that the only question for them to determine was, whether the check of $200 was given to said prisoner as an advance for the price of freight upon his cargo of corn, and for the purpose of meeting the current expenses of the trip to New York, and whether the same was appropriated to other purposes than that for which the same was advanced, without the assent, and with intent to defraud the persons advancing the same."

The jury having found the prisoner guilty, his counsel moved for a new trial upon the merits, upon the ground that the conviction was against the weight of evidence. The court refused such motion, and the prisoner's counsel excepted. The counsel for the prisoner further moved that a new trial be granted, upon the ground that there was no proof of the conversion or appropriation of any of the advances made to the prisoner, and especially of the said check for $200, without the assent, and with intent to defraud the persons advancing the same. The court refused to grant a new trial upon the grounds aforesaid; to which refusal the counsel for the prisoner excepted.

A. P. Laning, for the plaintiff in error.

I. The court erred in refusing to rule and decide that "no offense had been proved which the said court had jurisdiction to try." 1. The evidence does not show that any offense was committed in the county of Erie; nor is it so alleged in the indictment. This indictment was evidently intended to be, and was, drawn with reference to the provisions of chapter 431 of the laws of 1860. It will hardly be contended that an indictment for converting advances made as the cost and price of freight, and for refusing to apply the same to the purpose for which they were received, with intent to defraud the party making

Larkin *v.* The People.

such advances, has any reference whatever to the words, " or in respect to any portion of the cargo or lading of any boat or vessel," as used in this statute. To confer jurisdiction to try the case, the indictment must charge the offense to have been committed at some place within the county where the indictment is found, or to have been committed on board a vessel navigating a river, lake or canal, which river or canal passes through the county in which the trial is sought to be had. The indictment in this case does charge the offense to have been committed " at the village of Little Falls, in the county of Herkimer, on board of the said canal boat, which was a vessel called 'R. C. Palmer,' navigating the Erie canal, as aforesaid." There is no evidence whatever that any of the wrongs charged were done on board said canal boat, or on board any other vessel on said canal or elsewhere. If the refusal of the prisoner, when at Little Falls, to take the cargo through to New York, or to refund the freight advanced, was the felonious conversion charged in the indictment, then the testimony of Matthews, one of the complainants, detailing what occurred, shows that such conversion did not take place on board any vessel. The witness says: " Had a talk with Larkin at his boat; not on, but at his boat; that we had advanced him all his freight up to $50, and told him that I wanted him to take that cargo to New York, according to the bill of lading, and he declined to do it, or to refund any money. There was nothing else said at that time on that subject."

It may be claimed that the refusal of the prisoner, when in Buffalo, to take the corn to New York, or to give back the advances, constituted a conversion, and that such conversion being the offense charged, was committed within the county of Erie, and therefore the court had jurisdiction, without proof that the offense was committed on board a vessel navigating the canal, etc. If the evidence establishes such a state of facts, then the court erred in

refusing to discharge the prisoner, " on the grounds that there was not sufficient evidence to authorize his conviction upon the indictment," and also because " the prosecution had failed to establish the commission of any offense by the prisoner, as alleged in said indictment." Between the charge of a conversion of certain property, by the prisoner, on board a canal boat at Little Falls, in the county of Herkimer, and proof of a conversion of the same property in the county of Erie, there is a fatal variance.  The foregoing objections presented that precise question for the court to rule and decide, and the court erred in its decision thereon.  But if there was any conversion in this case, it was when the $200 check was delivered by the prisoner to C. Myers, at the city of Rochester; and over that offense the courts of Erie county had no jurisdiction.  It is of no consequence what the prisoner may have said, or done, or refused to do, at Buffalo, or at Little Falls, after he had parted with the possession of the check.  If, in parting with it he had been guilty of a conversion, he could not afterwards have converted it without its having again come into his possession, or under his control.  The check was not in the possession of the prisoner when either of the demands upon him was made.

II. The evidence fails to establish any conversion as charged in the indictment.  Under the charge of the court the only question for the jury to determine related to the $200 check.

That check reads as follows, viz :

                                   " Buffalo, Sept. 25, 1869.

Farmers and Mechanics' National Bank, Buffalo, pay John Sim Peter, or order, two hundred dollars, and charge
                                   R. H. BECKWITH & Co.

Indorsed, ' Pay to the order of C. Myers.'
                                   JOHN SIM PETER."

Peter was bookkeeper for Beckwith & Co., and drew the check and delivered it to the prisoner, indorsed as above. The prisoner delivered this $200 check to C. Myers, to whose order it was payable. By the very terms of the check, and of the indorsement thereon, Myers was entitled to receive the check, and the prisoner could have been guilty of no wrong in the act of delivering the check to him. To have retained the check, in his own hands, refusing to apply it to the purposes for which he received it, might have been a conversion of the check, but delivering it to Myers was no conversion. No matter what directions the prisoner gave to Myers, when he delivered to him the check, such delivery in itself was lawful and right, and the act, being legal, was not rendered illegal by anything the prisoner may have said to Myers at the time. The delivery of the check to Myers not being an act of conversion, words accompanying the delivery could not constitute such act a conversion of the check by the prisoner. The delivery of the check to Myers as a payment on the mortgage, would only operate as an appropriation by the prisoner, of the moneys to be thereafter received by Myers, on the check, to such payment. The delivery of the check, with directions to apply the same to such payment, may have been a wrongful conversion of the moneys actually received thereon, if the same were so applied, for which the prisoner could be held to answer; but it was for the conversion of the check, and not of the proceeds thereof, that the prisoner was convicted.

Nor can it be said that the prisoner did, "feloniously, utterly refuse to apply the said check to the purpose for which he received the same," when, in contemplation of law, the check was to be delivered to Myers; was only payable on his order; and was delivered to the prisoner with the knowledge of all the parties, that it would not be available for any purpose until delivered to, and indorsed by, Myers.

*Lyman K. Bass,* (district attorney,) for the defendants in error.

I. The court had jurisdiction of the offense charged and proven. (2 *R. S.* 727, § 44, *as amended in* 1860, *ch.* 431.) The proof tended to show that the acts constituting the offense, prohibited by the statute, took place on the boat. The witness, Matthews, saw the prisoner discharging the cargo from the boat, &c. Larkin was the master, and in the personal management and conduct of the boat. The act of discharging the cargo, was then and there a refusal to apply the advances to the purpose for which they were received. There is not any evidence (other than the prisoner's testimony) that he did not then have his advances. All the evidence in the case, (the prisoner's testimony only excepted,) showing any acts upon which the embezzlement could be predicated, relates to the discharge of the cargo at Little Falls, and to the prisoner's refusal there, and at Buffalo, to apply the money to the purpose for which he received it, or to account for it: (*Arch. Cr. Pl.* 70, *n. Rex* v. *Hobson,* 1 *East's P. C.* 24, *R. & Ry.* 56. *Rex* v. *Taylor, R. & Ry.* 63. 2 *Russell on Crimes,* 189, 190.) There being evidence sufficient to warrant finding the embezzlement on the boat at Little Falls, it was not error for the court to refuse to rule "that no offense had been proved, which the said court had jurisdiction to try." (*Whart. C. L.* § 1939.)

II. The evidence offered by the people, tending to show the expenses incurred by the prisoner in navigating his boat to Little Falls, was competent. It was not in their power to make the proof in any other manner. The disposition which the prisoner, in fact, had made of the advances, was only known to himself.

III. The only questions brought here, are such as are raised by exceptions taken on the trial. There is not any power here to review questions of fact. The jury has determined those. At common law a new trial could not be granted on the merits in criminal cases. (1 *Chitty's C. L.*

Larkin *v.* The People.

532.) The power to grant new trials on exceptions is expressly, and for the first time, conferred on the Supreme Court by the Revised Statutes, in 1830. (2 *R. S.* 736, §§ 21 *to* 27; 741, § 24. 2 *Graham & W. on New Trials*, 80.) The only power to grant new trials on the merits in criminal cases, given in the Supreme Court, was by laws of 1865, page 613, section 3, relating to capital cases only. (*Quimbo Appo case*, 20 *N. Y.* 531. *Willis case*, 32 *id.* 715. *Rogers case*, 3 *Park. C. R.* 632.) The exceptions taken at the close of the case, on the motion for a new trial, were therefore not well taken.

*By the Court,* JOHNSON, J.  The plaintiff in error was indicted, tried and convicted in the court of sessions of Erie county, for a crime charged in the indictment to have been committed at the village of Little Falls, in the county of Herkimer.  It was charged in the indictment that the crime was committed at the aforesaid place, on board a "canal boat, which was a vessel called *R. C. Palmer*, navigating the Erie canal as aforesaid, which said boat, being a vessel, in the course of this same voyage and trip, had been navigated through a part of the county of Erie aforesaid, and also through the said county of Herkimer."

It was necessary, in order to give the court jurisdiction to try the offense, that it should be alleged in the indictment, that the crime was committed "on board the boat or vessel," and that the boat or vessel, on that trip or voyage, had passed through some part of Erie county; and also to prove both facts upon the trial. (2 *R. S.* 727, § 44, *as amended by ch.* 431 *of the Laws of* 1860.)

It was proved, upon the trial, that the boat in question was navigating the Erie canal, and in the course of that trip or voyage had passed from Buffalo, on the canal, through a part of Erie county; but there was not a particle or shadow of evidence to prove that the crime charged, if any such had been committed at the place named in the

Larkin *v.* The People.

county of Herkimer, had been committed on board the canal boat, as charged. The question of the jurisdiction of the court to entertain and try the offense, was raised in various forms during the trial, and decided against the plaintiff in error. The only testimony in the whole case on which to base the slightest pretense that the checks had been converted by the plaintiff in error to his own use, at Little Falls, in the county of Herkimer, shows expressly that it was not on board the boat; and the whole case shows that if the checks, or either of them, had been unlawfully applied or converted by the plaintiff in error, it was not on board the boat, or elsewhere in the county of Herkimer.

This is sufficient to reverse the judgment, upon the ground of an entire want of jurisdiction in the court, upon the facts proved, to render it, or to entertain the case after the people had gone through with their evidence.

But it would not be difficult, I think, to show conclusively, were it necessary, that upon the undisputed facts appearing upon all the evidence, no offense whatever had been, anywhere, committed by the plaintiff in error, even under that most remarkable and extraordinary amendment to that section of the Revised Statutes relating to embezzlement by carriers and other persons entrusted with the goods and property of others to be transported or carried for hire, (2 *R. S.* 679, § 62,) by chapter 729 of the session laws of 1865. By this amendment, a carrier of goods who has received the whole or any part of the price for the carriage or transportation of the same, in advance, and shall apply the same to his own use, or to any other purpose than that for which the advance was made, without the consent of the person making the advance, " or shall refuse to apply the same to the purpose for which he received the same," is to be deemed guilty of embezzlement, and, on conviction, punished in the manner prescribed by law for feloniously stealing the property of another, to the

Larkin *v.* The People.

same amount and value. The money which a carrier re-
ceives as the price for the carriage or transportation of the
goods, upon his contract, is undeniably his own money,
and yet here is a statute which makes the use of that
money by its owner, in some way other than that contem-
plated by the parties when the advance was made, a crime
equal to a theft of the same amount or value of property,
from a third person, or from the person making the
advance upon the contract. It is a most anomalous and
extraordinary attempt, by statute, to confound and oblit-
erate all the settled and plain distinctions which have ex-
isted from time immemorial between a felony and a mere
breach of contract, in favor of a particular kind of business.
It cannot be looked upon otherwise than as a novel and
dangerous innovation upon the fundamental principles of
law, and as such, if it shall be allowed to stand, to be
regarded by all courts with extreme jealousy, and be in-
terpreted with the utmost strictness and rigor.

But in the case before us, the judge, in his charge to the
jury, was constrained to advise them that there was no
evidence in the case of the conversion by the plaintiff in
error, of any of the funds charged to have been wrong-
fully applied, or converted, by him, except the check for
$200. In this he was clearly right, as the whole case
shows. This check for $200, when delivered to the plain-
tiff in error, by the forwarders, and complainants, on the
contract, was not payable to him, or to his order, or to
bearer, but was payable "to the order of C. Myers."
Myers, it appears from the evidence, resided in the city
of Rochester, in Monroe county, and the only evidence in
the case, in regard to the disposition of that check, was
that of the plaintiff in error himself, who testified that he
delivered it to Myers, in Rochester, in payment of a debt
he owned him on the same boat, *R. C. Palmer.* He also
testifies that it was made out in that form at his request,
for the express purpose of enabling him to pay it to

Myers. This is not denied by the agent and bookkeeper of the forwarders, who made out and delivered the checks, but is rather confirmed by his testimony. But if it had been disputed, the form of the check alone would be conclusive, that Myers was to order how the check, or the avails thereof, should be disposed of. It is perfectly certain, therefore, upon the evidence, that this $200 check was used and disposed of in the precise manner intended, not only by the plaintiff in error, but by the agent making the advance, at the time it was made.

The persons making the advance did assent, by the very terms of the check, by which it was made, that Myers, and not the plaintiff in error, or any one else, should order as to the disposition of it.

The judgment must therefore be reversed, and the defendant therein be absolutely discharged.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]