## MACON, DUBLIN & SAVANNAH RAILROAD COMPANY

### *v.* ANCHORS.

</div>

1. Considering the order passed by the judge below in overruling the motion for a new trial, and the supplementary order or opinion filed with the record, it does not appear that the judge failed to exercise the discretion vested in him by law in passing upon the motion.

2. A part of the testimony of each of the witnesses whose testimony was objected to on the ground of irrelevancy tended to some extent to illustrate the issue as to structural defects in the car which was derailed, and in the derailment of which the plaintiff's husband was killed, or in the track at the place where the derailment occurred.

3. In view of the entire charge, the inaccuracies in the excerpt complained of do not require the grant of a new trial.

<div align="center">

AUGUST 14, 1913.

</div>

Action for damages. Before Judge Harris. Bibb superior court. June 4, 1912.

Fanny Anchors brought suit against the railroad company for damages from the homicide of her husband, Samuel Anchors, who was a section foreman for the railroad. While in charge of a hand-car carrying a gang of workmen to their work on the 31st of January, 1911, the car was derailed and Anchors received injuries which resulted in his death. Among other allegations of negligence, it was averred that the hand-car was defective in certain specified particulars, and that the track was defective where the derailment occurred. The material allegations of the petition were denied in the answer. The trial resulted in a verdict for the plaintiff. The defendant's motion for a new trial was overruled, and exception was taken.

In one ground of the motion complaint is made of the admission of the following testimony of the witness W. S. Anchors: "I saw a hand-car at Pike's Peak on Sunday, February 28th, where I went with Mr. Maynard and Mr. Defore on information from Mr. Langston as to where the car was. I found a red lever car; lost motion and lateral motion. Lateral motion three-quarters of an inch. I measured the car and distance between the wheel. The journal boxes had been bolted for some time underneath the beam. I measured on both sides of the car the distance from the center of the front and back. They did not measure same. The journal boxes on that car are to hold the wheel, journal, and axles. I noticed lateral motion in the car. It would swing, and the wheels on the left hand were three quarters of an inch closer than they were on the right. I noticed a beam broken on the right-hand side. The bolt was also out. It appeared to be an old break. The bolt was gone from the oil cellars. I saw no bolt on the car, no new hole bored in the journal boxes, no signs of new repairs, nor new iron in the car nor in the journal boxes. The car was painted and no paint rubbed off. If new holes had been bored for the journal boxes, I would have known it. I would have known if the journal boxes had been moved from one place to another. The purpose of the journal box was to hold the axle. The journal box was closer on the left than on the right, bolted together that way. The journal boxes had not been moved." This testimony was admitted, over the objection that it was irrelevant, as showing what

was the condition of the car at the time of the injury. The following testimony of the witness Walter Defore was admitted over a similar objection: "I went to Pike's Peak some time about the first of the year, with Mr. Maynard and Mr. Anchors, and saw a hand-car. I have been a machinist, having had 13 years experience. I examined that car down there. We measured the distance from the axle with a small reed, and the axles at one end about five eighths of an inch wider than the other. My recollection is the left side was the short side; I am not sure. It was an accurate measurement. Being shorter on one side than the other means the wheels don't tram. The journal boxes are small cases of iron, boxed, inverted, and bolted under the beam of the sill, which has Babbitt metal, and the journal and the axles rotating on the boxes. These wheels and axles did not have an appearance of having been moved, as far as I saw. They were bolted when I saw them. They could not be brought closer together except by striking a bolt or bending the bolt, or a very great bend in the center of the axle. I mean spring the axle; that answer is taking into consideration the amount of the wheels out of tram. If the axles were sprained five eighths of an inch, I don't think the car would run, if it was sprung enough to throw the axle five eighths of an inch out of tram. The hole is usually one sixteenth of an inch larger than the bolt. The boxes had no appearance of having been moved on the sill; if not, necessarily they must have been bolted out of the tram. This car on a straight track out of tram three quarters of an inch would cause the flanges to tend to mount the rail. If the car were going in this direction, and the rails come together like that, and the car ran over them, there would be more tendency to mount the rail in a joint of that character if the mismatched rail was on the side of which the flange of the wheel was hugging the rail. If the flanges mounted the rail, it would cause the car to run off the track." Substantially the same objection was urged to the following testimony of the witness W. R. Goodyear: "I had occasion to go to Fitzpatrick, about March or April of last year, with Mr. Jones, Mr. Anchors, and Mr. Maynard, and examine the hand-car, which we found out of tram three quarters of an inch, and a half inch, and three quarters lateral between the hub of the wheel and box, some of the bolts out of the oil cellars, and one of the beams broken. We examined the journal box, and I do not remember

that there was any appearance of its having been recently moved. They were bolted on the frame of the car. The wheel was out of tram three quarters of an inch. In reference to the bolting of the journal boxes, they were not put on in line. This car running on the track this side of Swift Creek three quarters of an inch out of tram, from four to six miles an hour, in reference to the flanges on the other side would have the effect of running it to the rail. If there was a bad joint in the track it would be more than apt to mount, more so than if it was not out of plumb. I was present at Swift Creek when Mr. Jones made the measurements." Similar objection was urged to the testimony of B. Jones, as follows: "My occupation is railroading as track foreman, of 21 years and seven months experience with Southern, Central, A. B. & A., A. & P. I have worked for the Macon, Dublin & Savannah Railroad, and I, with Mr. Anchors and Mr. Maynard, examined hand-car on the 5th of March, 1911, at Fitzpatrick. I found the car to be out of line, a difference in the sides of the measurement. One side of the wheels were not on the square on the frame. There was about three quarters of an inch difference between the two sides, and something like three quarters of an inch loose motion in the frame. It was a mighty shacklity car to be used. The speed wheel was loose on the axle; it didn't run true; the wheels on one side were nearer the gauge than the other side and lateral. The running gear doesn't come straight together; it is not square; and I found some bolts out on the seat of the car. There was a beam broken on the car. I saw no evidence of recent repairs on the car. The car is held in place by some small bolts and cups underneath, that come up through the frame. Where I was, we had to have cars run plumb. I could not look at that car and see the defect." Like objection was urged to the following testimony of the same witness: "I saw the track where the car was derailed on the Macon, Dublin & Savannah Railroad on the other side of a branch down by Fitzpatrick. I saw where a car ran off on the track. I have passed Swift Creek station several times. Can not say how far this was from Swift Creek. Mr. Goodyear, Anchors, and yourself were with me. I saw where there had been a car off on the cross-ties, and 45 or 50 feet west the track was out of gauge. Working standard track is four feet eight and a half, and that was four feet nine, because I measured it with a rule. It looked like the

car struck the ground not very far from the place I saw a mismatched joint. That is, the rails were not evenly spaced. The southern rail went out. There was a high place on the rail that went over the trestle near there, which would throw one side of the car up and the other down. On other railroads where I have worked, it would have been considered unsafe to use a car in that condition."

In another ground of the motion the following charge of the court was complained of: "If you should believe in this case that the railroad company have not exercised that degree of diligence I have charged you, either in reference to the car furnished, or with reference to the condition of the track, and that that constitutes negligence upon their part, then the plaintiff would be entitled to recover, provided that he was not killed and his death was not brought about by circumstances which he could have avoided, in which he could have avoided the consequences of the defendant's negligence." It is contended that this charge was error, "because it incorrectly stated the law and was inapplicable to the facts in the case, and because it was confusing by referring to the plaintiff as being not killed and to his death in the same sentence."

*Minter Wimberly, Jesse Harris,* and *Charles Akerman,* for plaintiff in error.

*Napier, Maynard & Plunkett,* contra.

BECK, J. (After stating the foregoing facts.)

1. In the brief of counsel for the plaintiff in error it is contended that the judge below "did not approve the finding of the jury, and failed to exercise the discretion which the law contemplates he should exercise in overruling a motion for a new trial; and that where a first application for a new trial is made on discretionary grounds, the trial judge must exercise his discretion in approval or disapproval of the verdict; that the order overruling the motion for a new trial in this case shows on its face that the judge did not exercise the discretion which the law vested in him." The failure of the judge below to exercise his discretion was not averred in the bill of exceptions nor made the subject of a special exception, and is urged for the first time in the brief and argument of counsel before this court. But under the ruling made in the case of *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 102 Am. St. R. 71,

1 Ann. Cas. 606), it is the duty of this court to pass upon the question thus raised.

Upon hearing the motion the judge passed the following order: "June 4th, 1912. The within motion for new trial and the amended motion for new trial coming on to be heard, and the original and the amended motion are hereby overruled on all grounds therein stated. The motion was held up after argument till this day by the court. N. E. Harris, Judge S. C. M. C." Following the order just quoted, overruling the motion for a new trial, we find in the record the following: "Anchors *vs.* M., D. & S. R. R. Co. Not having presided on the trial of this case, I have not felt that my discretion is quite as broad as that of the trial judge. I did not see the witnesses nor hear the evidence delivered. While I think the verdict may be against the weight of the evidence to sustain it, the jury had the right to believe the plaintiff's evidence, and I refuse to disturb the verdict. N. E. Harris, J. S. C. M. C." Immediately following this last-recited part of the record appears the following entry: "Filed in office, June 13, 1912. R. F. Hunter, Dep. Clerk."

Pretermitting all discussion as to whether or not the supplementary order or opinion filed by the court below as a part of the record in the case should be considered as a part of the order of the judge overruling the motion for a new trial, we are of the opinion that when that order and the original order are considered together it does not appear that the judge failed to exercise the discretion vested in him by law in passing upon the motion for a new trial. A very similar question to the one presented here was considered and discussed in the case of *Martin* v. *Bank of Leesburg,* 137 *Ga.* 290 (73 S. E. 387).

2. The testimony of certain witnesses, and the objection raised thereto by the movant at the time of the trial, is set out in the statement of facts. Where testimony is objected to in bulk, and upon examination it appears that a part of it was admissible, the order of the court overruling the objection will not be reversed if any part of the evidence was not open to the objection made. In the testimony of each of the witnesses there is some evidence from which the jury might have found that there were structural defects in the car which was derailed, or in the track at the place where the derailment occurred; and such evidence tending to show these

structural defects was admissible, though the witnesses did not see the car or the track until thirty days or more after the occurrence which it is alleged resulted in the death of the plaintiff's husband. *Southern Ry. Co.* v. *Hill,* 139 *Ga.* 549 (77 S. E. 803).

3. While the excerpt from the charge which is excepted to by plaintiff in error was not entirely faultless and accurate, we do not think, after reading the entire charge, that it is cause for a new trial. In the first place, we do not think the jury would have been at all confused by "referring to the plaintiff as being not killed and to his death in the same sentence." The charge as a whole clearly and fully states the case, and there can not be the slightest doubt that the jury distinctly understood that the plaintiff was the wife of the decedent and was suing to recover damages for his death alleged to have been caused by certain acts of negligence on the part of the defendant. And while in the excerpt from the charge quoted the law would have been completely stated as applicable to the hypothesis contained in the first part of the excerpt, in reference to the negligence of the defendant company, if the court had added that before the plaintiff could recover it should appear that the death of the plaintiff's husband was caused by the negligence of the defendant, or it should be made to appear that the negligence was the proximate cause of the death of the plaintiff's husband, yet such an omission as this is not cause for a new trial where it is disclosed that in a preceding part of the charge the court had made the right of the plaintiff to recover dependent upon a showing that the death of her husband was the result of the negligence of the defendant, and had properly instructed them that the plaintiff could not recover if the decedent had been "killed by his own carelessness amounting to a failure to exercise ordinary care," nor, although there was negligence upon the part of the defendant company, if the decedent could "by the exercise of ordinary care have avoided the consequences of the negligence of the defendant company."

*Judgment affirmed. All the Justices concur.*