22806. MAYNARD *v.* THE STATE.

DECIDED JULY 17, 1933.

*Oliver C. Hancock,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, John H. Hudson,* contra.

MacINTYRE, J. W. Gordon Maynard was charged with committing larceny after trust, in Fulton county, Georgia, on February 22, 1932, by fraudulently converting a certain diamond ring of the value of $650, intrusted to him by Atkinson & Woodward Incorporated. Having been found guilty of the offense charged, the defendant filed his motion for a new trial, based upon the general and certain special grounds.

The gist of the State's testimony is that the defendant went to the place of business of Atkinson & Woodward Incorporated, in Atlanta, Georgia, and told them that he would like to take said ring "on memorandum" to Thomaston, Upson county, Georgia, to show his wife, in order to see if it suited her, and that if she liked it he would buy it, and that he would report next day whether or not he would purchase the ring; that having known the defendant for many years, and having confidence in him, Mr. Woodward, of Atkinson & Woodward Incorporated, let the defendant have the ring in Fulton county, Georgia, "on memorandum" upon the conditions stated; and that, instead of returning the ring or completing the contract of purchase and sale, the defendant took the ring to Macon, Bibb county, Georgia, the next day and pawned it for $300 to C. H. Jones, who was in the small-loan business. The defendant claimed, in his statement to the jury, that a contract of purchase and sale had been made, and that, having decided to keep the ring, he, in accordance with his agreement, mailed a postdated check to Atkinson & Woodward Incorporated, for $600, and had received from them a letter acknowledging receipt of it. He further stated: "I had received a letter from Washington Warehouse Company in Macon, in regard to an obligation that I owed them. Macon and Thomaston are just forty-five miles apart. I went to Macon the night I got that. I was going to see Washington Warehouse Company and go on to Thomaston. When I got to Macon I found out the next morning that I owed an obligation that I had to pay. Well, as far as I was concerned, if I wanted that ring the contract had been made, although I did not buy it with any view

except giving it to my wife." In closing his statement, the defendant said: "He insisted upon a postdated check, and I thought I could make it good, and was fool enough to give it." The State introduced other testimony, relating to another transaction between different parties, to the effect that early in March, 1932 (the date of the offense alleged in the indictment in the instant case being February 22, 1932), the defendant went to White's jewelry store and paid $50 down on a diamond ring under a retention-title contract, and that subsequently White had to file a bail-trover proceeding in Macon to get the ring back from an establishment that loaned money, to which Maynard had disposed of it.

Grounds 1 and 2 of the amendment to the motion for a new trial complain that the other transaction was wholly independent of and disconnected with the transaction charged in the indictment, and that the evidence of it was hurtful and prejudicial to the defendant. Intent being one of the essential elements of the crime charged, this evidence was admissible, under the exception to the general rule,. because it tended to prove intent. *Cox* v. *State,* 165 *Ga.* 145 (139 S. E. 861). The other transaction was similar in nature, and so related in kind, and so closely connected in point of time, with the offense charged, as to throw light upon the question of intent. This testimony was also admissible because it was logically connected with the Atkinson & Woodward transaction, which was the case on trial. Both Theodore White and Harry May testified that in negotiating the diamond transaction with them the defendant said he had a ring from Atkinson & Woodward "on memorandum," and that he intended to return it to them if he got the one from Harry May. This had direct relevancy to the case on trial, the testimony tending to show that the defendant had obtained the ring from Atkinson & Woodward Incorporated, "on a memorandum," and that it was not a completed contract. "The overruling of an objection to certain testimony of a witness, or other evidence, in bulk, some of which is not open to the objection made, is not ground for a new trial." *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 716 (145 S. E. 486); *M., D. & S. R. Co.* v. *Anchors,* 140 *Ga.* 531 (2) (79 S. E. 153); *Gilbert* v. *State,* 27 *Ga. App.* 604 (3-a) (109 S. E. 697). We hold that there is no merit in special grounds 1 and 2.

Considering the excerpt from the charge complained of in special ground 4 in the light of its context and the charge as a whole,

it is. not reasonably susceptible of the construction that the defendant could be convicted if he only conceived the intention of fraudulently converting the property without committing the act in furtherance of that intention. The defendant presents in this ground the question whether or not the venue of the crime was in Fulton or Bibb county, Georgia. The nearest case of larceny after trust, with reference to this point, that we can find in this State is *Keys* v. *State*, 112 *Ga.* 392 (6) (37 S. E. 762, 81 Am. St. R. 63). In that case there was no evidence that the defendant had ever left the county where he received the money. In the instant case the uncontradicted evidence shows that the property was intrusted in Fulton county and pawned in Bibb county. In *Key* v. *State* the writer of the opinion said: "In 10 Am. & Eng. Enc. L. (2d ed.) 1025, it is declared: 'As a general rule the offense is committed, not where the property is received, but where it is converted, unless it is received with intent to fraudulently convert it. If an employee, agent, or bailee, however, refuses to account for property or money, with fraudulent intent, in the county in which it was received, or, if in that county he conceives the intent to convert the property to his own use, and has possession with such intent, the offense of embezzlement is complete, although he may actually expend or dispose of the money or property in another county.'" These quotations would indicate that the Supreme Court thought this law on the subject of venue in an embezzlement case was applicable to a larceny after trust case. We also are of this opinion. Article 3 of the Penal Code of Georgia, entitled "Embezzlement and Fraudulent Conversion," covers both these offenses. The law digests deal with them under the same title. In both offenses a trust is necessary, followed by a conversion. They are closely akin. In *Carter* v. *State*, 143 *Ga.* 632 (3) (85 S. E. 884), the court said: "Where the president of a bank located in Georgia, while out of the State, with the intent to embezzle the property of the bank, telegraphs to the cashier to send to him certain stock certificates belonging to the bank, stating that he will return the certificates, and the cashier in response to the telegram sends by mail the stock certificates to the president, who receives them out of the State and there disposes of them to his own use, the superior court of the county in this State where the bank is located and where the telegram is received and the shares of stock are deposited in the mail has jurisdiction to try

him for the alleged embezzlement." Referring to the foregoing decision, counsel for the State aptly say in their brief: "On page 639-640 it is pointed out that the bank president became *constructively present* in Gilmer county, Georgia (though he was actually in another State), through the instrumentality of the telegraph company, who became his agent in transmitting the order to send the certificates. So the case became as though Carter had been personally present in Gilmer county and obtained possession of the certificates there, and then carried them off in another State and converted them to his own use. The analogy is apparent to the case at bar. If the contention of the present plaintiff in error (Maynard) were correct, the Supreme Court would have held that Carter could not be prosecuted in Gilmer county for the wrongful conversion of the certificates, because he carried them off to another State before doing anything with them." See also *Mangham* v. *State,* 11 *Ga. App.* 427, 437 (75 S. E. 412).

The case of State *v.* Sullivan, 49 La. Ann. 197, 201 (21 So. 688, 62 Am. St. R. 644), is in point. In that decision the following language appears: "Defendant's contention that the place of an ultimate unlawful sale or pawning of property by a person holding the same through fiduciary relations with the owner is the only test and criterion of the place where embezzlement of that property was effected, and that antecedent acts by him, in other localities, are to be taken and considered as merely acts leading up to an embezzlement there, is not, in our opinion, sound. . . We are of the opinion that if the jewelry received by the defendant and entrusted to him by H. O. Maher was received in the parish of Ascension, to be there returned, but that instead of doing so defendant conceived, in that parish, the intention of fraudulently appropriating the same to his own use, and in furtherance of that intention he took the same to the city of New Orleans for the purpose of there unlawfully and fraudulently selling or disposing of the same, and that he did there fraudulently sell and dispose of the same and appropriate the same to his own use, he was legally subject to indictment in the parish of Ascension for embezzlement." We are of the opinion that in the instant case the jury, under the evidence, were authorized to find that the defendant, in Fulton county, was intrusted by the prosecutor with the personal property in question to be taken to Upson county for exhibition, and then to be returned to the owner in Ful-

ton county, and that the bailee immediately took it to Bibb county and there pawned it. We are further of the opinion that the jury were authorized to find that the defendant had conceived, in Fulton county, the intention of fraudulently converting the property to his own use, and that in furtherance of that intention he took the same to Bibb county for the purpose of there unlawfully and fraudulently disposing of the same. We therefore hold that under the facts of this case the venue could be laid in Fulton county. There is no merit in the general grounds of the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*