PEDDERSEN *v.* STATE

[No. 18, September Term, 1960.]

*Decided October 25, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert C. Heeney* for the appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Leonard T. Kardy, State's Attorney for Montgomery County,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal by Carl M. Peddersen (the defendant) from the judgment and sentence imposed by the court upon his conviction by a jury of embezzlement.

The defendant was the manager of the farm in Montgomery County owned by Ringgold Hart. One of the duties of his employment was to sell livestock whenever directed to do so by the owner. The manager had authority to choose to whom and at what price to sell, and to receive the proceeds of sale for his employer.

After preliminary negotiations with a commission merchant in Pennsylvania, and, pursuant to general instructions by the owner to sell, the defendant on September 11, 1956, accom-

panied sixty head of cattle, hauled by the buyer to Lancaster, where they were sold for $11,979.19. When the defendant was asked by the commission merchant to whom the check should be made, he replied, after some hesitation, that it should be made payable to himself. This was done, and the defendant returned to his home on the farm, called the owner and informed him of the sale. The owner instructed the defendant to mail the check to his office in Washington, D. C., but the defendant never complied with the instructions.

The next day (September 12) the defendant returned to Lancaster, presented the check to the drawee bank, obtained in exchange two treasurer's checks payable to the defendant for the sum of $5,390.63 each, and $1,197.93 in cash, and again returned to his home with the cash and treasurer's checks in his possession.

A day later (September 13) the defendant went to a bank in Frederick, cashed both of the treasurer's checks and came back to Montgomery County. On the following day (September 14) he revisited Frederick and purchased from the same bank five $1000 United States Savings Bonds made out in the name of the defendant. Upon returning home that evening, he learned that he and his wife were about to become involved in a custody suit over one of her children by a former husband. During the same evening he took his wife and children to an airport where they boarded a plane for the West Coast. The day after their departure (September 15) the defendant drove his automobile to Frederick, parked it in a lot, and also flew west.

The defendant was indicted by the Grand Jury of Montgomery County in November of 1956 for embezzlement, larceny after trust and grand larceny, but was not apprehended until 1959 when he voluntarily gave himself up to the F.B.I. at New Orleans. He waived extradition to Pennsylvania, where for reasons not clear in the record, he again waived extradition to Maryland. When he was released on bail in July of 1959 he returned to his new home in Mississippi.

The case was set for trial on December 14, 1959, but a continuance was granted because of the defendant's illness. Although he was informed that he must return to Maryland

before Christmas of 1959, he failed to return until January 5, 1960, which was the date set for trial. His motion for a further continuance was denied.

The defendant made no effort to raise the question of venue by a motion before trial as he might have done under Maryland Rule 725 b. Instead he chose to attack the jurisdiction of the trial court in the fundamental sense by motions for directed verdicts and by objections to the court's instructions to the jury on the ground that the crime was committed in Pennsylvania. The verdicts of the jury were guilty of embezzlement under the first count and not guilty under the other two counts.

On appeal the defendant assigns three reasons why he believes the judgment should be reversed: (i) that the crime of embezzlement was not committed in Montgomery County; (ii) that there was error in the instructions to the jury; and (iii) that the refusal to grant a continuance was an abuse of discretion.

### (i) and (ii)

Since the first and second contentions of the defendant are interrelated we shall consider them together. The first contention (raised by motions for directed verdicts at the close of the State's evidence and again at the close of all the evidence) is that the evidence was insufficient in law to sustain a conviction of the defendant of embezzlement in Montgomery County. The second contention (raised by an objection to the instructions) is that it was error to instruct the jury that the proper venue for the trial of the crime of embezzlement is the place where the intent to embezzle was formed.

In support of the proposition that the evidence was insufficient to support a conviction, the defendant relies on *Bowen v. State,* 206 Md. 368, 111 A. 2d 844 (1955). There, the defendant (the president of a title company), who was indicted in Montgomery County for embezzlement and larceny after trust, received the money (in the form of checks) in Bethesda, but deposited the checks in the bank account of the company in the District of Columbia, where the checks were paid, and where the money was withdrawn and appropriated by the defendant. In reversing a conviction for larceny after trust

and embezzlement, this Court held, citing *Worthington v. State,* 58 Md. 403 (1882),[1] among other cases and authorities, that no act of conversion or appropriation had taken place in Montgomery County, and therefore the court of that county had no jurisdiction.

In the *Bowen* case, *supra,* neither the fraudulent intent nor the act of appropriation occurred in Maryland. Here (in *Peddersen*), there is evidence from which an inference could be drawn that both of these elements occurred in this State. In the first place, the mere receiving of the check in Pennsylvania on September 11 was not clearly shown to be a conversion. Indeed, the contrary was shown by the fact that the defendant returned to Montgomery County that same day and informed his employer of the sale. Furthermore, the defendant himself testified that he had no fraudulent intent at that time, and since the check for the cattle could have been endorsed and made payable to his employer as he was instructed to do, the mere receipt and retention of the check was not an unequivocal act of appropriation. Nor is the fact that the defendant returned to Pennsylvania the next day to cash the check conclusive; he could still have endorsed the two treasurer's checks and, along with the cash, obeyed his employer's instructions to send the funds to him in Washington. Again, the testimony was to the effect that he did not decide to appropriate the money until after he had been to Frederick (on two consecutive days) and had cashed the treasurer's checks and purchased the savings bonds. In view of the testimony on the part of the defendant, the jury may well have believed that the fraudulent intent was not finally formed until the evening of September 14 upon the return of the defendant to Montgomery County from Frederick.

We think it is a fair inference, from all the facts and circumstances, that the fraudulent intent was actually formed over a period of four days—from September 11 to the evening of September 14—and that such intent did not finally culminate until the latter date when the defendant, after consultation

---

1. The holding in Worthington was that offenses against the laws of Maryland were punishable only when committed within its territorial limits.

with his wife and in order to avoid the possible consequences of the impending contest for custody of the child, decided to flee the State and carry the cash and bonds with him. Since it appears that the threat of the imminent custody suit was the stimulus that ultimately solidified the fraudulent intent, it is possible that the flight of the defendant with his family was the first clearly unequivocal act of appropriation. But be that as it may, the defendant's judicial confession that he had actually formed the fraudulent intent at a time when he had possession of the appropriated property was sufficient evidence to convict him of embezzlement in Montgomery County.

The basic objection to the instructions was based only on that part of the charge which informed the jury that it must find that fraudulent intent was formed in Montgomery County in order to convict the defendant of embezzlement.

To support his claim of error, the defendant cited a statement from 2 Wharton, *Criminal Law* (12th ed.), § 1309, which read: "Some act of conversion must be in the jurisdiction. Some act of conversion or appropriation by the bailee or carrier must be alleged and proved to have taken place within the jurisdiction of the court." In support of this statement the author cited *Larkin v. People,* 61 Barb. 226 (N. Y. 1871).[2] That case neither helps the defendant nor deals with the problem in this case since the ultimate holding was that, under the New York statutes concerning embezzlement, there had been no crime at all. Moreover, § 1309 is apparently inconsistent with an earlier section; compare the same text, at § 1289, where it was said: "The defendant may be tried in any county where any part of the embezzlement was committed, or where, upon being called upon to account, he disowned having received the money."

Other law writers have recognized that where intent plus possession is shown, this will be sufficient reason for a court to assume jurisdiction of the offense. See, for example, Clark and Marshall, *Crimes* (6th ed.), § 3.02:

---

2. In a later edition of Wharton on Criminal Law the quoted part of § 1309 was deleted and the Larkin case is not even referred to.

"[T]he offense [of embezzlement] is complete whenever a person who has been intrusted * * * [with money or property] forms an intent to convert it to his own use, and has possession with such intent. A person, therefore, may be indicted for embezzlement in the jurisdiction in which he had possession of the property or money with intent to convert it to his own use * * *".

See also 3 Underhill, *Criminal Evidence* (5th ed.), § 582 [the place of embezzlement depends largely on where the fraudulent intent was formed] ; 18 Am. Jur., *Embezzlement,* § 65 [the offense is committed where the property is received with intent to fraudulently convert it].

Since it is fundamental that an intent to appropriate money or property is a vital element of the crime of embezzlement, the courts are often faced with the difficulty of finding a clear showing of intent when there is no proof of an unequivocal act of appropriation within their jurisdiction. That problem was stated and succinctly dealt with in *People v. Brock, infra,* where it was said (at 70 P. 2d 214) : "Obviously the intent which accompanies the formation of a plan to do an act is inherently difficult to prove by direct evidence. The act itself together with the circumstances surrounding its execution must generally form the basis from which the intent may legitimately be inferred."

In addition to the law writers, the cases in other jurisdictions have long supported the rule that it is not necessary for the actual act of appropriation to occur within the territorial jurisdiction of the court if the essential element of fraudulent intent can be shown to have been formed either in the county where the property was received or in the county in which the property was possessed. Among these are *Brown v. State,* 4 S. W. 588 (Ct. App. Tex. 1887) [since the defendant may not have conceived the fraudulent intent to appropriate the money to his own use "until the very moment when he denied having received it," he was properly indicted in the jurisdiction where he denied its receipt] ;[3] *State v. Sullivan,* 21 So.

3. Texas had a special venue statute when the Brown case was

688 (La. 1896) [a defendant who conceived an intent to fraudulently appropriate jewelry in the place where it was received, and, in furtherance of that intention, took it to another place to dispose of it, may lawfully be indicted in the place where the property was received] ; *People v. Goodrich,* 75 P. 796 (Cal. 1904) [the jury was warranted in finding that intent to embezzle a boat was formed in the place where the defendant had promised the owner he would deliver it by a certain date, and not in the place where he had disposed of the property] ; *Woodward v. United States,* 38 D. C. App. 323 (1912) [the defendant having the money of his employer in his possession in the District of Columbia, where he had formed the intent to convert it to his own use, "was all that was necessary to lay the venue" in the District, though the defendant had traveled through several jurisdictions until the money had been exhausted] ; *Maynard v. State,* 170 S. E. 265 (Ga. 1933) ["If an employee * * * refuses to account for property or money, with fraudulent intent, in the county in which it was received, or, if in that county he conceives the intent to convert the property to his own use, and has possession with such intent, the offense of embezzlement is complete"] ; *People v. Brock,* 70 P. 2d 210 (Cal. 1937) ["(I)t is the place where the intent to embezzle is formed which is important in determining the question of jurisdiction in a prosecution for embezzlement"] ;[4] *State v. Serkau,* 20 A. 2d 725 (Conn. 1941) [since an embezzlement may extend over a considerable period of time and different acts may take place in several jurisdictions, it was reasonable for the trial court

decided, which laid proper venue in either the county where the property was taken or where it was received, but, as the Court in its opinion observed: "At common law, and without reference to our statute, these facts [fraudulent intent plus possession] gave jurisdiction to * * * [the trial court], and our statute, while it does not embrace, does not exclude jurisdiction in such case."

4. California, like Texas, had a special venue statute at the time of the decision in the Brock case, which provided that proper venue may be laid in any county where the property was taken, received or transported, nevertheless, it was held that fraudulent intent plus possession were still necessary prerequisites to the commission of the crime.

to "conclude that there was a taking in Connecticut, with intent to embezzle, in view of the fact that the defendant told * * * (the victim) that he was taking the securities (to New York) for investigation, that he sold the bonds two days later and almost immediately used the proceeds to pay his personal bills"] ; and *Heughan v. State,* 61 S. E. 2d 685 (Ga. 1950) [where property is received in one county and is thereafter fraudulently converted in another county, the jury would be authorized to conclude that intent to convert was formed in the county where the property was entrusted to him, and venue under such circumstance would properly be laid in that county].

In *Martel v. State,* 221 Md. 294, 157 A. 2d 437 (1960), where we had occasion to state at p. 299 that: "In embezzlement, the rule is that proper venue is the county where the act of appropriation or conversion took place, or where the intent to embezzle was formed, or where the property was entrusted, or where the accused is under an obligation to account", though not necessary to the decision in that case, was an indication of our accord with the modern trend of text writers and the cases herein cited. It appears, however, that that part of the generalization concerning intent needs amplification. The authorities herein referred to clearly indicate that the essential element in embezzlement, as in numerous other criminal offenses, is that of intent, and that venue may be laid in any county in which the money or property was received with intent to embezzle, or in the county in which the money or property was possessed and the intent to embezzle was formed, regardless of the fact that actual conversion may have taken place in another county or state. We hold, therefore, that where there is evidence, as there was in this case, to show that the defendant had possession in a stated county of the money or property appropriated, and also evidence to support an inference that the fraudulent intent to embezzle had been formed in the same county, such evidence is sufficient to establish proper venue.

### (iii)

The well settled rule in this State is that the granting of a continuance is within the sound discretion of the trial court.

and will not be disturbed unless there be an abuse of discretion which was prejudicial. *Adams Express Co. v. Trego,* 35 Md. 47 (1872); *Mead v. Tydings,* 133 Md. 608, 105 Atl. 863 (1919); *Millstein v. Yost,* 197 Md. 348, 79 A. 2d 149 (1951); *Jackson v. State,* 214 Md. 454, 135 A. 2d 638 (1957); *Hughes v. Averza,* 223 Md. 12, 161 A. 2d 671 (1960).

The defendant was informed by the court that he should return to Maryland for trial before Christmas of 1959. Instead of heeding these instructions, he chose to rely on what was allegedly told him by the bondsman to the effect that defendant's presence was not required until January 5, 1960. That the defendant did not appear until the day of trial was clearly due to disobedience of the court's order. Furthermore, it appears that counsel appointed by the court to represent the defendant was familiar with the case, had conferred with the defendant at the time bail was given, and, in response to an inquiry from the court the evening before trial was scheduled, stated that he was ready to proceed. Under these circumstances, it is apparent that the trial court did not abuse its discretion.

Moreover, it is clear that the defendant was not prejudiced by the refusal to grant a continuance. The claim is that postponement was wanted in order to call witnesses who could substantiate the contention that the defendant and the owner of the farm were partners. It was urged that one of the necessary witnesses who could establish this relationship was William L. Peters, yet when the State called him on the second day of the trial, he testified that he knew nothing of the alleged partnership. Ordinarily, when an allegedly material witness appears and testifies after the denial of a motion for continuance, the ruling is not prejudicial. See 12 Am. Jur., *Continuance,* § 50; *Mitchell v. State,* 22 Ga. 211 (1856); *Cremeans v. Commonwealth,* 52 S. E. 362 (Va. 1905). See also *Jackson v. State, supra,* for the rule as to what must be shown to prove prejudice for failure to continue a case because of the absence of a witness.

For the reasons stated the judgment must be affirmed.

*Judgment affirmed.*