RAY DELMARI WALDROP *v.* STATE
OF MARYLAND

[No. 599, September Term, 1970.]

*Decided June 24, 1971.*

---

372

The cause was argued before ORTH, THOMPSON and MOYLAN, JJ.

*Stephen A. Tarrant,* with whom was *Henry C. Engel, Jr.,* on the brief, for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* and *Florio N. Franetovich, Assistant State's Attorney for Harford County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Ray Delmari Waldrop, the appellant, was convicted of embezzlement in a court trial before Judge Albert P. Close in the Circuit Court for Harford County. He was sentenced to five years imprisonment. On appeal, his contentions are: 1. Lack of jurisdiction in Maryland; 2. Tainted identification; and 3. Insufficient evidence. All are meritless.

Appellant worked for Arnold Gilmer, Sr., trading as Gilmer Moving and Storage, Aberdeen, Maryland, as a truck driver handling and moving furniture. His duties included collecting C.O.D. charges and returning the company truck and money to the company office. In May, 1969, appellant was assigned by Gilmer to be in charge of moving Mrs. Frank Pulli from Rising Sun, Maryland, to Hershey, Pennsylvania. He started work on this assignment on May 6, 1969 when he and two helpers went to Mrs. Pulli's house to pack the shipment. They arrived at approximately 9:00 A.M. staying until approximately 2:00 P.M. Mrs. Pulli watched appellant and his helpers

while they were packing. Appellant and Mrs. Pulli were there for the full time of the packing.

On May 7, 1969, appellant was given instructions to pick up the Pulli shipment. He was advised to collect the delivery charges before unloading the truck. Appellant, with two helpers, went to the Pulli house to load the furniture while Mrs. Pulli was present. She left for Pennsylvania and next saw appellant at approximately 5:30 P.M. when he came to her Pennsylvania address to deliver the furniture. At that time, she paid him $478.75 in the form of four one hundred dollar bills, three twenty dollar bills, a ten dollar bill, a five dollar bill, three one dollar bills and three quarters. Mrs. Pulli presented a driver's weight certificate and a uniform household bill of lading signed by the appellant after she paid him. Appellant and his helpers worked at the Pulli house until approximately 9:00 P.M. with Mrs. Pulli directing the placement of the furniture. The copy of the bill of lading indicated the delivery was made on May 7, 1969, and that $478.75 C.O.D. charges were to be collected. Mr. Gilmer testified that to his knowledge the company never received the money paid by Mrs. Pulli.

The truck, in perfect operating condition, was found abandoned on Route 7 in the Perryman area of Harford County on May 8, 1969, after appellant did not show up for work and was not at his residence. The truck's location was approximately two miles from the company offices but near appellant's residence. The keys and moving papers were in the truck. When the Gilmer offices were closed, the fence around the business premises was not locked although it might appear locked to a casual observer. This system was explained to appellant so that he could return the truck after the business offices closed.

## I Jurisdiction

Appellant contends his motion for judgment of acquittal should have been granted because the State of Maryland lacked jurisdiction. Of course, an offense against the laws of Maryland is punishable only when committed

within its territory. A person cannot be convicted for crimes committed in another state. To support his contention, he cites *Bowen v. State,* 206 Md. 368, 111 A. 2d 844 and *Peddersen v. State,* 223 Md. 329, 164 A. 2d 539.

In *Bowen v. State, supra,* the defendant (the President of a Title Company), who was indicted in Montgomery County, Maryland, for embezzlement and larceny after trust, received the money in the form of checks in Bethesda, Montgomery County, Maryland, but deposited the checks in the bank account of his company in the District of Columbia, where the checks were paid, and where the money was withdrawn and appropriated by the defendant. In reversing a conviction for larceny after trust and embezzlement, the Court of Appeals held that no act of conversion nor appropriation had taken place in Maryland; therefore, the Court had no jurisdiction.

In *Peddersen v. State, supra,* the defendant managed, in Montgomery County, Maryland, a farm owned by another person. Defendant's duties included selling livestock whenever directed to do so by the owner, although the defendant had authority to choose the buyer, set the price, and to receive the proceeds of sale for his employer. On September 11, 1956, the defendant accompanied some cattle to Lancaster, Pennsylvania. In Pennsylvania, the defendant received a check payable to himself for the sale price of the cattle. The defendant then returned to Montgomery County. On September 12, the defendant returned to Lancaster, Pennsylvania, presented the check to the drawee bank, and obtained in exchange two treasurer's checks and some cash; he then returned to Montgomery County. On September 13, the defendant went to a bank in Frederick, Maryland, cashed both of the treasurer's checks, and returned to Montgomery County. On September 14, he revisited the Frederick bank and purchased five $1,000 United States Savings Bonds made out in the name of the defendant. He then returned to Montgomery County where he learned of impending litigation against him and his wife. That evening the defendant's wife and child left Maryland; the defendant left

the next day. He surrendered himself to the F.B.I. in New Orleans approximately three years later.

On the above facts, the Court of Appeals concluded the Montgomery County court had jurisdiction and venue over Peddersen. The Court concluded that where intent plus possession is shown, there is sufficient reason for a court to assume jurisdiction over the offense of embezzlement, citing Clark and Marshall, *Crimes* (6th Edition), § 3.02; 3 Underhill, *Criminal Evidence,* (5th Edition), § 582; 18 Am. Jur., *Embezzlement,* § 65, and several out-of-state cases.

In *Peddersen,* the Court explained that in *Bowen, supra,* neither the fraudulent intent nor the act of appropriation occurred in Maryland. In the instant case, there is evidence from which an inference could be drawn that both elements occurred in Maryland. As to the act of appropriation, the mere receiving of the C.O.D. funds by appellant in Pennsylvania on May 8 was not shown to be a conversion occurring in another state. Indeed, the contrary was shown by the fact that the defendant most probably returned to Harford County immediately after delivering the Pulli furniture.

It is a fair inference from all of the facts that the fraudulent intent was actually formed, or in any event, continued to exist, in Harford County, Maryland, particularly since it was in that county that appellant departed from his assigned duties. It may be rationally inferred that until he returned to Harford County, appellant had properly performed his duties including packing and loading the shipment, collecting the C.O.D. charges, unloading, delivering the moving papers to Mrs. Pulli, returning to Maryland, and dropping off his helpers. Thus, at that point, appellant decided to abscond with the money and abandon the truck. Since here, as in *Peddersen,* both elements are in Harford County, Maryland, jurisdiction is established. *Bowen, supra,* where neither element existed in Maryland, is consistent with this conclusion. Since possession and intent existed in Maryland, there is no need for this Court to decide jurisdiction

when one of the elements is present in one state and the other element in another state.

Appellant's jurisdiction contention may be viewed differently as contending that the Court should not have inferred the facts that supported jurisdiction, particularly regarding the formation of fraudulent intent. Guilt in embezzlement cases is almost always a matter of inference, *Couture v. State,* 7 Md. App. 269, 255 A. 2d 84, and if the rational inferences prove the crime was committed in Maryland, there is no error in trying appellant in Maryland. The inferences here, being rational, represent no error.

Although unnecessary for our decision here, some review on venue in embezzlement cases may also be helpful. In *Martel v. State,* 221 Md. 294, 299, 157 A. 2d 437, *cert. denied,* 363 U. S. 849, 80 S. Ct. 1628, 4 L.Ed.2d 1732, the Court of Appeals announced four different criteria for determining proper venue. The Court concluded that proper venue was in any county: 1. where the act of appropriation or conversion took place. 2. where the intent to embezzle was formed. 3. where the property was entrusted. 4. or where the accused is under an obligation to account. Later, in *Peddersen v. State, supra,* these four alternatives were revised when the Court concluded that since the essential element in embezzlement is intent, venue may be laid in any county in which: 1. the money or property was received with intent to embezzle. 2. or in the county in which the money or property was possessed and the intent to embezzle was formed, regardless of the fact that actual conversion may have taken place in another county or state. 223 Md. at 337, 164 A. 2d at 544. Thus, under the second alternative for proper venue defined in *Peddersen,* the venue in appellant's case was clearly appropriate in Harford County regardless of the fact that appellant received the money in Pennsylvania, since there is evidence to support a rational inference that the appellant had possession of the money in Harford County and also evidence

to support an inference that the fraudulent intent to embezzle existed in the same county.

## II Tainted Identification

Appellant contends the in-court identification of appellant by Mrs. Pulli should have been stricken because she was shown three photographs of appellant for a period of a few seconds, a few minutes before trial.

The evidence shows that Mrs. Pulli watched appellant for approximately five hours while he worked in her home on May 6, and observed him for approximately four hours on May 7, for a total of approximately nine hours. She remembered very specifically how appellant was dressed on both days, how he combed his hair, and the appearance of his sideburns. She stated she was extremely conscious of people's facial characteristics and had a good memory of those characteristics. She stated that her in-court identification of appellant was based on her memory from the time of moving and further stated that the photographs shown to her had no effect on her identification of appellant.

Considering this photographic identification on its own facts, it is clear that after approximately nine hours of Mrs. Pulli viewing the appellant that the photographic identification procedure was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285.

## III Sufficiency of the Evidence

Lastly, it is contended by the appellant that his motion for judgment of acquittal should have been granted because there was insufficient evidence to sustain the conviction.

By its terms, Md. Code, Art. 27, § 129 requires proof that: 1. the accused was employed as a cashier, servant, agent, clerk or officer by a person or body corporate. 2. that in such capacity the accused received personal property for or in the name or on account of his master or

employer, and 3. the accused thereafter fraudulently converted such property. The statute does not require that the embezzled property be entrusted to the accused directly by the master; it may be entrusted by another person on his behalf.

In this case, the testimony of Arnold Gilmer, Sr. proved appellant to be a servant or agent. Mrs. Pulli's testimony established that he received money from her on the account of Gilmer Moving and Storage. The abandoned truck, appellant's absence from his residence, his failure to return to work, and his failure to turn the money into his employer all establish his intent to fraudulently convert the property. The appellant's argument that the employer's testimony as to the non receipt of the money was insufficient to show the money was not received by some other person in the organization is specious under the circumstances of this case. Thus, the direct and inferential evidence supports appellant's conviction. *Couture v. State, supra* and *Peddersen v. State, supra.*

*Judgment affirmed.*