JOSEPH WORTHINGTON vs. THE STATE OF MARYLAND.

*Larceny outside of the State—Liability to Indictment for bringing Stolen goods into this State.*

When a person steals goods in another State and brings them into this, the person stealing cannot be indicted and punished here for the crime committed in the former State; but the act of bringing such stolen goods into this State is a new larceny, for which the party may be indicted in the Courts of this State and punished.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court. The evidence showed that the larceny for which the appellant was indicted, was committed in West Virginia, and that he was arrested in this State with the stolen goods in his possession.

*Exception.*—The traverser moved the Court to strike out the above testimony from the consideration of the jury; but the Court, (ALVEY, and MOTTER, J.,) overruled said motion. The traverser excepted, and the verdict and judgment being against him, he appealed.

The cause was submitted to BARTOL, C. J., STONE, GRASON, MILLER, ROBINSON, IRVING and RITCHIE, J.

*Edward Stake*, for the appellant.

This appeal presents, for the first time in the history of this State, the question whether the possession by the thief in this State, of property stolen by him in another State, constitutes the crime of larceny. A review of the English cases, shows that this doctrine cannot be sustained at the common law. *Rex vs. Prowes*, 1 *Moody's C. C.*, 349; *Arch. C. P. & P.*, 242; 2 *East, P. C.*, 772.

In this country, wherever the rule of the common law has been departed from, it has been put explicitly upon the ground that a local common law has grown up, *sub silentio,* in each of these States. *State vs. Ellis,* 3 *Conn.,* 185; *State vs. Bartlett,* 11 *Maine,* 653.

No such local practice has prevailed in this State, as to supplant the common law. The case of *Cummings vs. State,* 1 *H. & J.,* 340, is the only reported case, and the old General Court did not even intimate the existence of such a local practice. The single decision of the Court of Oyer & Terminer of Baltimore County, does not establish a universal rule on the subject. To create a local common law, the doctrine must be of universal application, and immemorial usage in the Courts of this State. Without such a rule, the common law of England must prevail. *Art. 5—Bill of Rights.*

The affirmative of the proposition is not only inconsistent with authority, but is incompatible with the general principles of law and natural justice. Criminal laws are in their nature, local, and in their operations, are confined within the limits of the State in which they are enacted. When larceny in this State is to be inferred from the possession of property stolen in another State, it is the foreign and not the domestic law which is enforced. The taking may not have been felonious in the foreign State, and if such original acquisition of the property was not criminal, it cannot be made so by the transportation of such property into this State. *State vs. LeBlanch,* 2 *Vroom,* 82; *Commonwealth vs. Uprichard,* 3 *Gray,* 434; *Simmons vs. Commonwealth,* 5 *Binney,* 617; *The People vs. Gardner,* 2 *Johns.,* 477.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

The evidence ought not to have been excluded, because even if it were true that such evidence showed a previous felonious taking of the particular goods in the State of

West Virginia, it equally showed that the subsequent asportation of said goods, in this State, was felonious; and as each asportation of stolen goods is a new taking, 1 *Hale's P. C.*, (*Stokes and Ingersoll*,) 507, 508; 1 *Hawk. P. C.*, 8*th Eng. Ed.*, *ch.* 19, *sec.* 52, *page* 151; 2 *East P. C.*, 771, 772; 2 *Russell on Crimes*, 9*th Am. Ed.*, 327, the evidence of the felonious asportation of the particular goods in another State, was evidence directly tending to prove the felonious intent of the appellant in his new taking of the same goods in this State. *Bloomer vs. State*, 48 *Md.*, 529.

Simple larceny, which consists in the wrongful, or fraudulent, taking and carrying away, by any person, of the mere personal goods of another, from any place, with a felonious intent to convert them to the taker's use, and make them his property, without the consent of the owner, is an offence at common law. 2 *East's P. C.*, 553. It is, therefore, an offence in every jurisdiction in which the common law of England forms a part of the governing law. The common law was incorporated in the laws of the State of Virginia by the ordinance of its convention in 1776, Code of Virginia, 1860, page 112, and is a part of the law of the State of West Virginia. See *W. Va. Code of* 1868, *page* 91, and *W. Va. Revised Statutes of* 1879; *Scott vs. Lunt*, 7 *Peters*, 605.

The common law has always formed part of the law of Maryland. 1776, *Dec. of Rights, Art.* 3; *Dec. of Rights*, 1850, *Art.* 3; *Dec. of Rights*, 1864, *Art.* 4; *Dec. of Rights*, 1867, *Art.* 5.

At the common law, as has been seen, each asportation of stolen goods is a new taking. If the goods were first stolen in West Virginia, it was an offence in that State. If a subsequent asportation took place in this State, it was an offence here. "The continuance of the trespass and felony amounted to a new caption and asportation." 2 *East's P. C.*, 771, 772.

In this case none of the difficulties are presented, which are found in certain English cases. In *Butler's Case*, referred to by Lord Coke in *the Case of the Admiralty*, 13 *Coke*, 53, the jurisdiction of the English Courts was denied, because the offence was committed at sea, where the common law of England was not in force. In *Anderson's Case*, 2 *East P. C.*, 772, the original taking was in Scotland. *Hale's Hist. of Comm. Law*, 4th *Eng. Ed.*, 190, 219; *Calvin's Case*, 7 *Coke*, 23; 1 *Steph. Comm.*, 87. In the case of *Parry and Roberts*, 2 *East P. C.*, 773, the original taking was in the Isle of Anglesea, which was part of Wales. 1 *Steph. Comm.*, 87. In *Rex vs. Prowes*, 1 *Moody C. C.*, 349, 2 *Russ. on Crimes*, 9th *Am. Ed.*, 331, the original taking was in the Island of Jersey, one of the Channel Islands, originally a part of Normandy. 1 *Steph. Comm.*, 105; *Hale's Hist. of Comm. Law*, 4th *Eng. Ed.*, 191, 192; *Calvin's Case*, 7 *Coke*, 20, 21; *In Regina vs. Madge*, 9 *C. & P.*, 29; 38 *E. C. L. Rep.*, 23, the original taking was in France. The reason of the rulings in these cases was that, as the common law of England was not in force in these respective places, there was, in such cases, no defined beginning of the necessary fraudulent intent, necessary to stamp as a felony any subsequent asportation of the same property within the limits of England.

But the pending case presents very different considerations. The offence of larceny, as defined by the common law, exists in West Virginia. The evidence, offered by the State, sufficed to connect the appellant with a compound offence, defined in part by a statute of West Virginia, and in part by the common law, viz., the offence of entering a store-house in that State, and stealing therefrom particular goods. 1 *Revised Statutes of West Virginia*, 1879, ch. 41, secs. 12 and 13, page 394; and by showing such connection, to prove his original intent in obtaining possession of the goods, which he carried into Washington County, in this State. This subsequent aspor-

tation of these goods in that county, originally acquired with such evil intent, was, under the authorities already cited, a new felonious taking of the property; and the Circuit Court of the county in this State in which this new taking occurred, had jurisdiction of the offence.

The right of a State to assume criminal jurisdiction in a case where goods, stolen in another State, are brought within its territory, and to treat such offence as a stealing, and asportation within its limits, is maintained in *Whart. on Crim. Ev.*, (8th Ed.,) sec. 111, and secs. 291, 930; 1 *Bishop on Crim. Law*, (6th Ed.,) secs 136–142, and in the following cases: *Cummings vs. State*, 1 *II. & J.*, 340; *State vs. Underwood*, 49 *Maine*, 181; *Comm. vs. Andrews*, 2 *Mass.*, 21–24; *Comm. vs. Holder*, 9 *Gray*, 7; *Comm. vs. White*, 123 *Mass.*, 433; *Ferrill vs. Comm.*, 1 *Duvall, Ky.*, 156; *State vs. Ellis*, 3 *Conn.*, 187; *Watson vs. State*, 36 *Miss.*, 612; *People vs. Williams*, 24 *Mich.*, 164; *Myers vs. People*, 26 *Ill.*, 176; *State vs. Bennett*, 14 *Iowa*, 482; *State vs. Johnson*, 2 *Oregon*, 115; *Hamilton vs. State*, 11 *Ohio*, 435; *State vs. Bartlett*, 11 *Vermont*, 653; *U. S. vs. Tolson*, 1 *Cranch C. C. R.*, 269; *U. S. vs. Hawkey*, 2 *Cranch C. C. R.*, 65; *U. S. vs. Mason*, 4 *Cranch C. C. R.*, 410.

If it be true, therefore, as has been shown by the authorities already cited, that each new felonious asportation of stolen property is a new taking, and the property in the goods stolen is unchanged by any such asportation, it is difficult to understand the theory upon which the criminal jurisdiction of a State can be denied, within whose territory an asportation of stolen property, belonging to a citizen of another State, has been plainly committed.

There is no force in the objection that the appellant may be hereafter tried and indicted in West Virginia for the offence of breaking and entering the store-house at Falling Waters and stealing therefrom. If he has vio-

lated the laws both of West Virginia and Maryland, there is no sound reason why he should not be punished in both States.   1 *Bishop on Crim. Law,* (6*th Ed.,*) 136–142; *Whart. on Conflict of Laws,* sec. 934.

GRASON, J., delivered the opinion of the Court.

The only question presented in this case is whether an indictment for the larceny of goods in this State, can be sustained upon proof showing that the party indicted had stolen the same goods in another State and brought them within our jurisdiction.

This question has never been settled by this Court.   In 1802, as reported in *Cummings vs. State of Maryland,* 1 *Har. & John.,* 340, 343, it appears that Cummings had been indicted in Baltimore County for the larceny of a mare, and the jury found a special verdict that Cummings had stolen the mare in Chester County, in the State of Pennsylvania, and brought her into this State, and the Court upon such finding adjudged him guilty.   A writ of error was sued out, but the General Court quashed the writ because it was not returned within the time required. So the question remains an open one in this State.   The authorities elsewhere are very conflicting and cannot be reconciled.   In *Butler's Case,* 13 *Coke,* 53, *Anderson's Case,* 2 *East's P. C.,* 772, *Pary's and Roberts' Case,* 2 *East's P. C.,* 773 and in *Rex vs. Prowes,* 1 *Moody's C. C.,* 349, it was held that there was no defined beginning of the necessary fraudulent intent, necessary to stamp as a felony any subsequent asportation of the same goods within the limits of England, because the common law of that country did not extend to and did not form any part of the law of the countries in which the larcenies in those cases had been originally committed.   The goods in each of those cases had been stolen in countries to which the common law did not extend and . had been brought into England.   But the law in England has been since changed

by Act of Parliament. It seems therefore, that the decisions in the cases referred to would have been different if the common law of England had formed part of the law of the countries in which the goods had first been stolen. If this be so, those cases would be authority for sustaining the jurisdiction of the Circuit Court for Washington County over this case, for the common law forms part of the law of West Virginia, where the goods mentioned were first stolen, and from which State they were brought into this State ; see *Declaration of Rights of State of Virginia of* 1776, *the Code of that State of* 1860, *page* 112, and the *Code of West Virginia of* 1868, *page* 91, and the *Revised Code of the latter State of* 1879; and it was adopted as part of the law of this State by the Declaration of Rights in 1776, and has ever since been continued such by the Constitutions of 1850, 1864 and 1867.

Larceny consists in the wrongful taking and carrying away the chattels of another with a felonious intent to convert them to the taker's own use, and is a crime at the common law, and consequently, an offence in every jurisdiction in which the common law is part of the governing law. And, at common law, every asportation is a new taking. 1 *Hale's P. Cr.*, 507-508; 1 *Hawkin's P. Cr.*, ch. 19, sec. 52; 2 *East's P. Cr.*, 771-772; 2 *Russell on Crimes*, 327. When a person steals goods in another State and brings them into this, the person stealing them cannot be indicted and punished here for the crime committed in the former State, for one State cannot enforce the criminal laws of another, but the act of bringing such stolen goods into this State is, as we have already stated, a new larceny, for which the party may be indicted in the Courts of this State and punished. The legal authority to indict and punish in such cases has been recognized and exercised by the Courts of many States of the Union, and we refer to the following cases: *State vs. Underwood*, 49 *Maine*, 181; *Commonwealth vs. Andrews*,

2 *Mass.*, 22-24; *Same vs. Holder*, 9 *Gray*, 7; *Same vs. White*, 123 *Mass.*, 433; *Farrell vs. Commonwealth*, 1 *Duval*, 156; *State vs. Ellis*, 3 *Conn.*, 187; *Watson vs. State*, 36 *Miss.*, 612; *People vs. Williams*, 24 *Mich.*, 164; *Myers vs. People*, 36 *Ill.*, 176; *State vs. Bennett*, 14 *Iowa*, 482; *State vs. Johnson*, 2 *Oregon*, 115; *Hamilton vs. State*, 11 *Ohio*, 435, and *State vs. Bartlett*, 11 *Vermont*, 653.   The same principle has also been maintained in the Federal Courts.   See *U. S. vs. Tolson*, 1 *Cranch C ir. Court Reps.*, 269; *U. S. vs. Hawkey*, 2 *Cranch*, 65; *U. S. vs. Mason*, 4 *Cranch*, 65.   The same principle is also announced by *Wharton* in his work on *Criminal Evidence*, (*8th Ed.*,) *sec.* 111, and in his work on *Crim. Law*, secs. 290–291, and by *Bishop's Crim. Law*, secs. 136–142, *and notes thereto.*   In some of the other States the law has been held to be otherwise, and in New York it was so held, but in the latter State the law has been since changed by the Legislature.   One great objection, which has been urged against the principle sustained by the decisions, to which we have referred, is, that a party may be punished twice for the same offence, once in the State where the larceny was first committed, and again in the State into which he carried the stolen goods.   If a party has committed a crime against the laws of two States we can perceive no good reason why he should not be punished in both States; and Mr. *Bishop* in his work on *Criminal Law, sec.* 136, very justly says, "to let him go free of punishment for the felony which he has committed against our laws because he had before committed a similar felony against the laws of another country, is to suffer foreign laws to suspend the action of our own."

The rulings of the Circuit Court will be affirmed and the cause remanded.

*Rulings affirmed, and
cause remanded.*

(Decided 11th July, 1882.)