## GOODMAN *v.* STATE

[No. 88, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, MARBURY and OPPENHEIMER, JJ.

*Barnard T. Welsh,* with whom was *Elizabeth Tennery* on the brief, for the appellant.

*Guy J. Cicone, Special Attorney,* with whom were *Thomas B. Finan, Attorney General,* and *Leonard T. Kardy, State's Attorney for Montgomery County,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

On May 30, 1961, James S. Goodman, appellant, entered the office of Dr. Norman C. Shoemaker at 8005 Woodbury Drive in Montgomery County, Maryland, and falsely represented himself to be Gordon L. Bennett. Appellant complained of suffering severe pains in the left side of his abdomen. A urine sample was taken, and on microscopic examination showed 30 mg. of albumin, a considerable number of red cells and occasional pus cells. Appellant gave Dr. Shoemaker the false impression that he was suffering from some kidney disturbance, and to lessen the pain, the doctor recommended a drug. Appellant then requested dilaudid, a potent narcotic, as all other pain relieving drugs made him sick. Dr. Shoemaker wrote a prescription for four tablets of this drug, and told appellant that he should have a hospital X-ray examination. The patient took the prescription into Washington, D. C., where it was filled by a registered pharmacist at the Discount Drug Store, 7723 Georgia Avenue. The next morning, he called Dr. Shoemaker and admitted on the telephone that he was addicted to heroin, and wished to obtain more narcotics. The doctor made an appointment to see appellant, and thereafter notified the police. On June 1, 1961, appellant was arrested in Montgomery County and identified in a lineup by Dr. Shoemaker as the individual to whom he had given the prescription the day before.

The appellant's real name was James S. Goodman, and he was subsequently charged with violation of Maryland's narcotic laws. The indictment contained two counts, the first of which was abandoned. The second count alleged that the defendant: "* * * at the County aforesaid, unlawfully did obtain by a certain misrepresentation, a narcotic drug, to wit, a quantity of Dilaudid, in violation of Article 27, Section 295 of the Annotated Code of Maryland". On February 11, 1964, Goodman was tried by a jury which returned a verdict of guilty on the second count, and he was sentenced by Judge Anderson to eighteen months in the Maryland House of Correction.

On appeal, the appellant presents one question: Where the indictment alleges the defendant unlawfully obtained in Maryland by misrepresentation a drug in violation of the narcotic laws, can a conviction under such an indictment be sustained where the evidence presented shows the misrepresentation took place in Maryland, but the obtention and purchase of the drug was in Washington, D. C.

Goodman was convicted under Article 27, Section 295 of the Annotated Code of Maryland (1957), which reads in part: "(a) No person shall *obtain* or *attempt* to obtain a narcotic drug, or *procure* or *attempt* to procure the administration of a narcotic drug (1) by fraud, deceit, misrepresentation or subterfuge; or (2) by the forgery or alteration of a prescription or of any written order; or (3) by the concealment of a material fact; or (4) by the use of a false name or the giving of a false address." (Emphasis added.) The count in the indictment under which Goodman was convicted clearly sets forth that he "* * * unlawfully did *obtain* by a certain misrepresentation, a narcotic drug, to wit, a quantity of Dilaudid." (Emphasis added.) We express no opinion whether the appellant could have been convicted on an indictment charging an attempt to obtain a narcotic drug.

The undisputed facts show that the misrepresentation took place in Maryland. However, the obtention of the drug occurred in Washington, D. C. The crime consists of two elements: the criminal intent and the act. Here, the criminal intent was formed in Maryland, but the proscribed act took place in Washington, D. C. Under the indictment, the criminal in-

tent consists of the misrepresentation, and the forbidden act is the unlawful obtention of the narcotic. "Obtain" means "to get hold of by effort," "to gain possession of," or "to attain." Webster's New International Dictionary, Second Edition; Black's Law Dictionary, Fourth Edition. Consequently, according to the plain meaning of the word, appellant did not obtain the drug until he had gained possession of it. The grand jury charged the defendant with obtaining unlawfully a narcotic drug within Montgomery County, Maryland. Therefore, the burden was on the State to prove both the obtention of the drug and that it took place in Maryland. We find that the State did not prove that the obtention took place in Maryland, but in Washington, D. C.; and thus it did not prove that the defendant obtained narcotics as stated in the indictment.

It is clear that ordinarily offenses against the laws of Maryland are punishable only when committed within its territorial limits. *Breeding v. State,* 220 Md. 193, 151 A. 2d 743; *Bowen v. State,* 206 Md. 368, 111 A. 2d 844; *Worthington v. State,* 58 Md. 403, 42 Am. Rep. 338. The State argues that the obtaining of the prescription is synonymous with the obtaining of the drug. However this may be, the appellant was not indicted for attempting to obtain, and there is a clear distinction between an indictment alleging an unlawful obtention and an unlawful attempt to obtain a narcotic drug. We hold that to convict the defendant of the obtention of a narcotic drug in Maryland, the State must prove that appellant actually did obtain the dilaudid within this State. The State proved that the narcotic was obtained in Washington, D. C., thus we find that the court below was without jurisdiction.

*Judgment reversed. Costs to be paid by the County Council of Montgomery County.*