# JOHN BRADLEY SYDNOR *v.* STATE OF MARYLAND

[No. 963, September Term, 1977.]

*Decided June 7, 1978.*

The cause was argued before MORTON, MELVIN and WILNER, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A.*

*Marshall, Jr., State's Attorney for Prince George's County,* and *Leonard Casalino, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant, John Bradley Sydnor, was convicted by a jury in the Circuit Court for Prince George's County (Couch, J., presiding) of first degree murder, first degree rape and first degree sexual offense. The court merged the rape conviction with the murder conviction and sentenced appellant to consecutive terms of life imprisonment for the murder and sexual offense convictions.

Appellant contends that the trial judge erred (1) in refusing to grant his motion to suppress certain out-of-court statements he had made to the police and (2) in instructing the jury on the felony murder statute which he asserts is inapplicable to his case.

The record reveals that on the morning of November 6, 1976, Kathleen Sebastian was discovered dead on a parking lot behind a church in Prince George's County. She had been the victim of rape and a sexual offense in addition to having been severely mutilated. On the next day her abandoned car was found on a parking lot in a nearby apartment complex.

Joy Deaton, a resident of the apartment complex and former girlfriend of appellant, had been with appellant and the deceased on the night of November 5 at a local restaurant. Ms. Deaton subsequently left the restaurant alone. When she awoke on November 6 she discovered appellant asleep in her apartment. His clothing was in disarray and a large grass stain was visible on the knees of his trousers.

This information was subsequently relayed to Corporals M. K. Morrissette and T. R. Tucker of the Prince George's County Police Department who were investigating the death of Ms. Sebastian. Tests were performed on appellant's trousers and the victim's car. It was determined that a large stain discovered around the crotch of the trousers was semen and that the fingerprints found on the car matched those of appellant. Also, a zodiac medallion found near the body was

determined to contain appellant's birth sign and Ms. Deaton identified the medallion as belonging to appellant.

On December 1, 1976, armed with the foregoing information, Morrissette and Tucker left Prince George's County and proceeded to Hollywood, Maryland, in St. Mary's County where appellant was believed to be staying with his father. They neither sought nor obtained an arrest warrant nor were they accompanied by a police officer of St. Mary's County.

Morrissette and Tucker arrived at the home of appellant's father in an unmarked police car. While Morrissette spoke to appellant's father, Tucker identified himself to appellant. He told appellant that he wanted to speak to him concerning the death of Kathleen Sebastian. He then requested appellant to accompany the officers back to Prince George's County. Appellant agreed and, after carrying some packages from his father's truck into the house, got into the back seat of the police car. On the ride to Prince George's County, Tucker advised appellant of his rights under *Miranda v. Arizona,* 384 U. S. 436 (1966), and briefly described the information the police had obtained in the case thus far. Morrissette did not speak to appellant.

Upon arriving at the police station in Prince George's County, Morrissette identified himself and interviewed appellant. After reviewing with appellant all of the information that had been assembled, Morrissette asked appellant if he had any knowledge concerning the death of Kathleen Sebastian. Appellant indicated that he did. Morrissette had appellant read and sign a waiver of rights form after which he took appellant's statement. Appellant described having had intercourse with Ms. Sebastian on the night in question and thereafter running over her with her car. It was this statement that was the object of appellant's unsuccessful motion to suppress.

Appellant first contends "that the action of the two police officers in taking him into custody in St. Mary's County constituted an arrest," one that they were not empowered to make since they were police officers of Prince George's County. Appellant posits that his confession, being the fruit

of the alleged illegal arrest, should have been suppressed. *Wong Sun v. United States,* 371 U. S. 471 (1963); *Ryon v. State,* 29 Md. App. 62 (1975), *aff'd* 278 Md. 302 (1976). Appellant does not argue that his confession was involuntary or unreliable, but only that it was the product of an improper arrest. We do not agree.

In *Bouldin v. State,* 276 Md. 511 (1976), the Court of Appeals articulated what actions and intentions were necessary in order for an arrest to be 'manifested. At pages 515-16, the Court stated:

> "It is generally recognized that an arrest is the taking, seizing, or detaining of the person of another (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. 5 Am.Jur.2d *Arrest* § 1 (1962). It is said that four elements must ordinarily coalesce to constitute a legal arrest: (1) an intent to arrest; (2) under a real or pretended authority; (3) accompanied by a seizure or detention of the person; and (4) which is understood by the person arrested. 6A C.J.S. *Arrest* § 42 (1975); Creamer, *The Law of Arrest, Search and Seizure,* ch. 3, at 49 (1968).
>
> We have defined an arrest in general terms as the detention of a known or suspected offender for the purpose of prosecuting him for a crime. *McChan v. State,* 238 Md. 149, 207 A. 2d 632 (1965); *Cornish v. State,* 215 Md. 64, 137 A. 2d 170 (1957). Our cases make clear, as *McChan* states, that in ordinary circumstances 'there is a detention only when there is a touching by the arrestor or when the arrestee is told that he is under arrest and submits [but] [w]here there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative, for in order for there to be an arrest in such case, there must always be an intent on the

part of one to arrest the other and an intent on the part of such other to submit.' 238 Md. at 157. Ordinarily, therefore, there can be no arrest where there is no restraint or where the person sought to be arrested is not conscious of any restraint."

As appellant does not claim that Morrissette and Tucker "touched" him in St. Mary's County or that he was ever explicitly informed that he was under arrest, our inquiry therefore focuses on the intentions and understandings of the parties when appellant was approached by the police officers at his father's house, entered the police car and returned to Prince George's County.

Tucker testified at the suppression hearing that an arrest warrant was not obtained for appellant prior to the encounter in St. Mary's County because he and Morrissette had no intention of arresting appellant. They simply viewed the journey to St. Mary's County as the next logical step in their investigation, not as its culmination. Moreover, Morrissette testified that had appellant refused to accompany him and Tucker to Prince George's County, they would have respected his wishes and would not have forced him to comply with their request. Had appellant so refused, Morrissette stated that he would have left the premises, obtained an arrest warrant and returned with the proper authorities from St. Mary's County to consummate the arrest.

We also find it significant that appellant, after being requested to accompany the police officers, was allowed to unload his father's truck and carry packages into the house. Had Tucker and Morrissette intended to arrest appellant at this time, we think it unlikely that they would have let him enjoy such freedom of movement.

Appellant argues that the fact Tucker advised him of his *Miranda* rights while on the ride to Prince George's County evidences Tucker's intention to take him into custody. This Court, however, rejected such a proposition in *Cummings v. State,* 27 Md. App. 361, 376 (1975), when we stated that "the gratuitous and unnecessary giving of *Miranda* warnings ... [does not] operate to convert an otherwise non-custodial

situation into a custodial one." Nor do we feel, as does appellant, that the existence, *vel non,* of probable cause to arrest thereby automatically rendered Tucker's and Morrissette's relations with appellant as an attempt to arrest. The mere right to arrest, without an outward manifestation of an intent to effectuate that right, is not the equivalent of an arrest. Finally, we attribute weight to the fact that Tucker and Morrissette did not employ any physical restraint on appellant. *Cummings v. State, supra* at 375.

Thus, we conclude that the trial judge was not clearly erroneous in his implicit determination at the suppression hearing that an arrest had not been effectuated at the house of appellant's father since appellant willingly returned with the police officers to Prince George's County. *Combs v. State,* 237 Md. 428, 436 (1965). Hence, appellant's contention that the confession was inadmissible because it was the product of an illegal arrest falls of its own weight.

Appellant next contends that the jury should not have been instructed as to the felony murder statute, Maryland Code, art. 27, § 410, since the crime for which he was convicted, first degree rape,[1] was not one of the felonies enumerated therein on November 6, 1976, the date the crime was committed. At that time § 410 stated that "[a]ll murder which shall be committed in the perpetration of . . . any rape . . . shall be murder in the first degree." In support of his position, appellant points out that § 410 was amended, effective July 1, 1977, to include "any rape in any degree," rather than simply "any rape." Appellant proffers that this amendment "was an implicit recognition that the felony murder statute was not applicable to first or second degree rapes committed between the effective date of the new rape statute (July 1, 1976) and the amendment of the felony murder statute (July 1, 1977)." We disagree.

> "The cardinal rule in the construction of statutes
> is to effectuate the real and actual intention of the
> Legislature. . . . Of course, a statute should be

---

1. *See* Maryland Code, art. 27, § 462, (Laws of Maryland, 1976, ch. 573, effective July 1, 1976). Prior to the enactment of this law, the crime of rape with an unconsenting female existed only at common law in Maryland and was not divided into various degrees.

construed according to the ordinary and natural import of its language, since it is the language of the statute which constitutes the primary source for determining the legislative intent. . . . Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning." *State v. Fabritz,* 276 Md. 416, 421-22 (1975).

We think it is beyond dispute that the natural import of the phrase "any rape," as employed in § 410 before the amendment, encompassed all rapes of various degrees.

Nor are we persuaded by appellant's argument that the amendment to "any rape in any degree" evidences an implicit recognition on the part of the legislature that the old § 410 did not embody all of the various classes of rape created by § 462. While the Maryland General Assembly did not elucidate their motives in enacting the amendment to § 410, we observe that "[w]here a former statute is amended, or a doubtful meaning of a former statute rendered certain by subsequent legislation a number of courts have held that such amendment or subsequent legislation is strong evidence of what the legislature intended by the first statute." *Connolley v. Collier,* 39 Md. App. (1978), quoting 2A, Sutherland, *Statutes and Statutory Construction,* § 49.11 (Sands ed. 1973). Here, the legislature merely sought to avoid the very controversy that we are presently confronting by simply clarifying § 410. In essence, we view the amendment as a mere technical, rather than substantive, change to the felony murder statute.

*Judgments affirmed; costs to be paid by appellant.*