# STATE OF MARYLAND *v.* JOHNNY CLAYTON JONES

[No. 720, September Term, 1981.]

*Decided April 7, 1982.*

The cause was argued before THOMPSON, MOORE and MACDANIEL, JJ.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Diane G. Goldsmith, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Judith R. Catterton, Assistant State's Attorney for Montgomery County,* on the brief, for appellant.

*George F. Paxton, Assigned Public Defender,* with whom were *Lerch, Early & Roseman, Chartered* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

The appellee's motion to dismiss a charge of first degree rape was granted by the Circuit Court for Montgomery County (FAIRBANKS, J.) because of lack of jurisdiction. On appeal, the State argues first, that Art. 27, § 465, Md. Ann. Code (1982 Repl. Vol.) (Jurisdiction where victim transported.) confers subject matter jurisdiction because the victim had been abducted by force in Maryland and driven to the District of Columbia where vaginal intercourse occurred. Alternatively, the State contends, common law confers jurisdiction because essential elements of the statutory offense took place in Maryland. We agree with the court below that § 465 pertains to venue, not jurisdiction, but we agree with the State, for the reasons stated herein, that Maryland had jurisdiction under the common law to try the appellee for first degree rape. Accordingly, we reverse and remand.

I

The assistant State's Attorney and defense counsel stipulated to the following facts: Appellee Johnny Clayton Jones

came upon the victim on the morning of April 4, 1980, as she alighted from her car in a parking lot in Chevy Chase, Maryland, on her way to work at a restaurant nearby. Appellee forced the victim back into her car, struck her, pushed her head down on the car floor, tied her arms behind her back with a sweater, and drove off. About 10 minutes later, he stopped the car at a bus stop. At that time, he picked up an ice scraper and warned the victim, "you know what damage I can do with this . . ." Appellee then drove around for about half an hour and stopped at some park within the District of Columbia where he took the victim out of the car and forced her to submit to vaginal intercourse. Afterward, appellee drove the victim back into Maryland and left her car near the area where he had abducted her. The victim went to work and the police were called.

Subsequently, appellee was apprehended and charged with first-degree rape, kidnapping, robbery, and assault and battery. Following the court's dismissal of the rape charge on May 4, 1981, appellee pled guilty to the other charges and was sentenced to ten years for kidnapping and eight years each on the robbery and assault and battery charges, all concurrent to a sentence he was then serving in Virginia.

## II

Criminal jurisdiction has been defined "as the power and authority constitutionally conferred on a court, judge, or magistrate to take cognizance of an offense. . . ." 21 C.J.S. Courts, § 19. The courts of one state cannot take cognizance of a crime committed against the laws of a neighboring state. *Bowen v. State,* 206 Md. 368, 378, 111 A.2d 844 (1955).

Venue, on the other hand, is the place of the trial, the "county in which a court of appropriate jurisdiction may properly hear and determine the case. . . ." *Stewart v. State,* 21 Md. App. 346, 348, 319 A.2d 621 (1974).

Venue presupposes proper jurisdiction, 1 Wharton's Criminal Procedure § 36 at 103 (12th ed. 1974), for without it, a court's judgment is void. *Brown v. State,* 37 N.E.2d 73 (Ind.

1941). However, both jurisdiction and venue are founded in locality — the place where the crime occurred. *Id.* at 78. *See United States v. Cores,* 356 U.S. 405 (1958). This common factor has led to the use of the term "territorial jurisdiction," *Urciolo v. State,* 272 Md. 607, 325 A.2d 878 (1974). Some confusion has resulted in other states from using the terms, venue and jurisdiction, interchangeably. *See McBurney v. State,* 280 Md. 21, 31, n.7, 371 A.2d 129 (1977).

Whatever the state of confusion elsewhere, this State respects the distinction. In sum, jurisdiction is the power to hear and determine a case; venue signifies the place of trial. *Guarnera v. State,* 23 Md. App. 525, 328 A.2d 327 (1974).

The statute at issue in the State's first argument, Art. 27, § 465, is reproduced below:

> § 465. Jurisdiction where victim transported.
>
> If a person is transported by any means, with the intent to violate this subheading and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies where the transportation was offered, solicited, begun, continued or ended.

We note that the term "jurisdiction" is used twice, although in a territorial sense. The statutory language plainly relates to venue between the counties in Maryland.[1] The circuit court of a county is the proper place to try a defendant accused of a sex offense when his transportation of the victim

---

1. Because the statutory language is unambiguous, we need not consider legislative history to determine legislative intent. State v. Fabritz, 276 Md. 416, 421-2, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942 (1976), except to point out that a sponsor of proposed amendments to the rape statute described the one relating to § 465 as follows: "S.B. 28 — Rape and Sexual Offenses — Venue. This bill clarifies the venue section of the rape and sexual offenses statute. . . ." Memorandum from Steny Hamilton Hoyer, President, Senate of Maryland, Jan. 9, 1978. Further, when the predecessor of § 465 was first enacted in 1924, it was accompanied by an explanation that its purpose was "to fix the jurisdiction over the said offenses," as between the counties and Baltimore City. Laws of Maryland, ch. 359, p. 943 (1924). This history affords another example of the loose usage of the word, "jurisdiction."

"was offered, solicited, begun, continued or ended" in that county. Thus, a defendant may be tried for rape in one county even though vaginal intercourse may have occurred in an adjoining county. *See Deinhardt v. State,* 29 Md. App. 391, 398, 348 A.2d 286 (1975), *cert. denied,* 277 Md. 736 (1976).[2]

The transportation of the victim, *i.e.,* the actual movement in, through, or to a county, establishes venue. Jurisdiction over the crime itself flows from the general power granted in Md. Cts. & Jud. Proc. Code Ann. § 1-501 (1980 Repl. Vol.). Section 465 does not apply to a defendant who has transported his victim across state lines. The fact that the legislature used the word "county" and not "state" is clearly controlling.[3]

Where the legislature intended to confer jurisdiction, it has done so. For example, Art. 27, § 337 (1982 Repl. Vol.) permits the prosecution for kidnapping of any person who transports his victim "out of or within" the State. *Hunt v. State,* 12 Md. App. 286, 278 A.2d 637 (1971).

Section 465 has no extra-territorial effect — it is simply a venue statute, as the lower court found. We turn now to the question of whether the court had jurisdiction to try the defendant for first-degree rape under the common law.

### III

One state cannot punish a defendant for a crime committed in another state. *Breeding v. State,* 220 Md. 193,

---

**2.** At common law, an offense consisting of a series of acts, part of which may occur in one county and part in another, was punishable in neither unless enough acts were done in one county so as to constitute a complete offense. To alleviate the resultant anomalies, venue statutes were enacted, establishing venue in the county where the crime was initiated and/or in any county in which one of the elements occurred. 21 Am.Jur.2d Criminal Law § 366 (1981). *See* Moore v. Commonwealth, 523 S.W.2d 635 (Ct.App.Ky. 1975); *cf.,* State v. Longway, 400 A.2d 1002 (Vt. 1979).

**3.** As Judge Fairbanks stated: "I see no possible way of escaping the use of the word, 'county.' If the legislature had chosen to confer jurisdiction as have other states, it could easily have done so by saying, in effect, that this state could try a sex offense if all or any part of the offense occurred in the State of Maryland. . . ."

151 A.2d 743 (1959). Specifically, Maryland has no legal right to prosecute a person for a crime committed in the District of Columbia. *Regle v. State,* 9 Md. App. 346, 357, 264 A.2d 119 (1970). It is indisputable that Maryland has jurisdiction only of a crime committed in Maryland. The essential query is what is meant by "a crime committed in Maryland." Must every element of a crime occur within the geographical confines of the State?[4] Maryland has addressed this question in the context of multi-element crimes,[5] but there is no prior case involving a statutory rape with extrastate elements.

"All the American states preserve the theory of territorial jurisdiction[6] over local offenses by insisting upon the presence of some local element as a condition to prosecution of crimes which also have extrastate elements." Leflar, American Conflicts Law, § 111 at 224 (3d ed. 1977).[7] "In many cases, the requisite elements of the crime may be committed in different jurisdictions, and in such cases any

---

4. "[W]hat are the boundaries is a question of law, and where the boundaries are is a question of fact." Rusha v. Little, 309 A.2d 867, 869 (Me. 1973). Thus, after deciding that a state has jurisdiction, the court may give to the jury the question of where the crime actually occurred when the facts are in dispute. *See* State v. Batdorf, 238 S.E.2d 497 (N.C. 1977).

5. A representative sampling of the many Maryland criminal cases that span geographical boundaries includes: Conspiracy, Bloomer v. State, 48 Md. 521 (1878); Boddie v. State, 6 Md. App. 523, 252 A.2d 290 (1969). Homicide, Stout v. State, 76 Md. 317, 25 A. 299 (1892). Embezzlement, Bowen v. State, 206 Md. 368, 111 A.2d 844 (1955); Peddersen v. State, 223 Md. 329, 164 A.2d 539 (1960). Obtaining narcotic drug, Goodman v. State, 237 Md. 64, 205 A.2d 53 (1964). Robbery, Hamilton v. State, 12 Md. App. 91, 277 A.2d 460 (1971). Conversion, Urciolo v. State, 272 Md. 607, 325 A.2d 878 (1974). Kidnapping, Isaacs v. State, 31 Md. App. 604, 358 A.2d 273 (1976).

6. Strict territorial theory, unrelieved by mitigating fictions, has helped defendants who were careful about their travel plans, according to Leflar. Thus, the theory of constructive presence in the state was found to confer jurisdiction and/or venue in *Simpson v. State,* 17 S.E. 984 (Ga. 1893). There the defendant in South Carolina, who fired a pistol at the victim across the river in Georgia but missed, was convicted of assault by the Georgia court, which found that he was present in the state through the agency of his "leaden messenger." *Id.* at 985.

7. Courts are generally unwilling to carry this theory to extremes. *See, e.g.,* People v. Buffum, 256 P.2d 317 (Calif. 1953) (mere preparation insufficient to confer jurisdiction; acts must at least be the equivalent of the crime of attempt) and State v. Baldwin, 305 A.2d 555 (Me. 1973) (reasonable doubt whether rape committed in Maine or New Hampshire; no jurisdiction).

state in which an essential part of the crime is committed may take jurisdiction. It is necessary to discriminate carefully between those acts essential to the crime and those acts merely incidental to the crime." 21 Am.Jur.2d Criminal Law, § 345 (1981). Acts done in one State as a preliminary to completion of a crime in a second State may be, and sometimes are, punished as crimes in the first State. Thomas v. State, 553 S.W.2d 32, 33 (Ark. 1977). The later results give criminal meaning to the earlier acts. *Leflar, supra,* § 115 at 232.[8] Thus, Leflar reasons, "[i]f the forum has a substantial concern with the criminal act, and can reasonably apply its statutory definition to the local part of the act, it ought to prosecute." *Id.,* § 113 at 228.

Sexual offenses in Maryland have been codified and structured by degree in Art. 27, § 461 *et seq.* Prior to the enactment of the subtitle in 1976, the crime of rape existed only at common law in Maryland and was not divided into degrees. *Sydnor v. State,* 39 Md. App. 459, 387 A.2d 297 (1978). What now constitutes first degree rape is as follows:

§ 462. First degree rape.

(a) *What constitutes.* — A person is guilty of rape in the first degree if the person *engages in vaginal intercourse* with another person *by force or threat of force against the will and without the consent* of the other person and:

(1) Employs or *displays* a dangerous or deadly weapon or *an article which the other person reasonably concludes is a dangerous* or deadly *weapon;* or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(3) Threatens or *places the victim in fear that the*

---

**8.** *See, for example,* State v. Harrington, 260 A.2d 692 (Vt. 1969). "Where the crime is composed of an interstate series of acts, it is jurisdictionally competent for a state to attach legal consequences to any overt act committed within its boundaries, even though the final impact and injury may occur elsewhere." (Citations omitted.) *Id.* at 697.

*victim* or any person known to the victim *will be imminently subjected to* death, suffocation, strangulation, disfigurement, serious physical injury, or *kidnapping;* or

(4) The person commits the offense aided and abetted by one or more other persons.

(b) *Penalty.* — Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for no more than the period of bis natural life. (Emphasis added.)

The primary difference between this statute and common law rape is the inclusion of four aggravating circumstances.

The purpose of the statute was to close "the gap which formerly existed between the common law misdemeanor of assault and the felony of rape. . . ." Note, Rape and Other Sexual Offense Law Reform in Maryland, 1976-1977, 7 U.Balt.L.Rev. 151, 163 (1977). In so doing, the legislature added elements to the traditional trilogy of common law rape, thus requiring proof of a fourth factor to convict a person of first degree rape. The legislature also broadened the language of common law rape by including "threat of force," specified the conduct as "vaginal intercourse," retained the conditions "against the will and without the consent," and eliminated gender.

Based upon the stipulations in this case, we can isolate five elements:

1) vaginal intercourse,
2) force,
3) lack of consent and against the will,
4) display of article reasonably believed to be dangerous,
5) placement of victim in imminent fear of kidnapping.

The first three plus No. 4 or No. 5 would have to be proved to sustain the charge of first degree rape. Each is therefore integral to the charge. Here, vaginal intercourse occurred in

the District of Columbia, force was applied in the initial abduction of the victim in Maryland, and consent was withheld and will overborne in Maryland. That the victim was placed in imminent fear of kidnapping in this State, *see Moore v. State,* 23 Md. App. 540 (1974), 329 A.2d 48, *cert. denied,* 274 Md. 730 (1975) may be inferred from the record which relates that the appellee pushed her head down on the floor of the car, obviously to conceal her while driving the vehicle away from the parking lot in Maryland. *See* Art. 27, § 337. The display of the dangerous article — the ice scraper — may be fairly inferred to have occurred in either Maryland or the District, depending on the location of the bus stop. The victim was unable to tell. Thus, at least three and, inferentially, four, of the elements of first degree rape present in this case were initiated in the State of Maryland.

Like certain other crimes such as robbery, larceny, kidnapping, conspiracy, and murder, the elements of first degree rape may occur over a period of time and in more than one jurisdiction.[9] This reality was recognized by the Fifth Circuit in a case that is strikingly apposite to our own, *Leonard v. United States,* 500 F.2d 673 (5th Cir. 1974). There, the defendant accosted a woman on an Air Force Base in Alabama, threatened her with a screwdriver, and forced her into his car. They then drove to a motel off base where criminal intercourse occurred. On appeal, the defendant claimed that the federal district court lacked jurisdiction to try him under 18 U.S.C. § 2031. (Penalty for rape committed within the special maritime and territorial jurisdiction of the United States). The Fifth Circuit's *per curiam* opinion stated in language appropriate to the instant case:

> *A sovereign has jurisdiction to try an offense where only a part of that offense has been committed within its boundaries. Ford v. United States,* 273 U.S. 593

---

**9.** In *State v. Gallup,* 520 S.W.2d 619 (Mo. Ct. App. 1975), the defendant claimed the State had no jurisdiction or venue to try him for forcible rape because the State failed to prove the crime occurred in Boone County, Missouri. In construing Missouri's venue statute, the court found that the initial threat of physical violence constituted an element of the rape statute. Thus, "it is of no consequence that the penetrations of prosecutrix occurred at some other place, or even in some other county." *Id.* at 622. *See also* State v. Burnside, 527 S.W.2d 22 (Mo. Ct. App. 1975).

(1927); *Rivard v. United States,* 375 F.2d 882 (5th Cir. 1967), *cert. denied, Groleau v. United States,* 389 U.S. 884 (1967). *Therefore, if appellant committed a part of the crime on federal lands, the federal court had jurisdiction.*

" 'The federal crime of rape carries with it the requirement of proof of the use of force by the offender and of an absence of consent by the victim.' Williams v. United States, 327 U.S. 711, 715 (1946).

*"In this case the element of force employed by appellant to achieve his purpose began on federal lands and continued to the consummation of the crime at a site off the Air Force Base. We conclude that the trial court had jurisdiction and the judgment of conviction is affirmed."* (Citations omitted.) (Emphasis added.)

Closer to home, *Adair v. United States,* 391 A.2d 288 (D.C. C.A. 1978), held that the District of Columbia had jurisdiction to convict the defendant of mayhem and assault with a dangerous weapon even though the actual attack and malicious disfigurement occurred in Maryland. The victim in *Adair* was accosted in the District, driven to a tourist home in Maryland, attacked and cut in Maryland, driven back to the District, and there robbed. The court stated:

"Even if we accept as true appellant's contention that the altercation took place solely in Maryland, he would still be answerable under the laws of the District of Columbia:

'A crime may be a single act and immediate in all its consequences and the locality where it was committed is its "vicinage." On the other hand, a crime may be the result of a series of acts or the result of a single act. The direct consequences may be made to occur at various times and in different localities. The criminal act, the notice of the perpetrator, the cause, and the effect, are but parts of the complete transaction. *Wherever any part is done,*

> *that becomes the locality of the crime as much as where it may have culminated.'"* Id. at 290. (Emphasis added.) (Citation omitted.)

Thus, the defendant's continuing interaction with the victim in the District and Maryland was sufficient to confer jurisdiction over all the crimes committed during the episode.[10]

*Jordan v. United States,* 350 A.2d 735 (D.C.C.A. 1976), cited in *Adair,* held that even though the forcible taking had occurred in Virginia, the defendant could be convicted of robbery in the District because the robbery was not completed until the defendant had escaped with the money. In that case, the defendant and two fellow convicts commandeered a car in Virginia, robbed one of the two occupants at knifepoint and then dropped them off in the District. Chief Judge Reilly stated:

> "Under the law of this jurisdiction, robbery takes on the characteristics of a continuing offense when there is a lapse of time between the taking and the safe escape of the robber with the proceeds." *Id.* at 738.

Both *Adair* and *Jordan* found no jurisdictional limitations imposed by the District of Columbia statute granting general criminal jurisdiction to the court.[11]

States that have relied on common law jurisdiction to try defendants whose crimes crossed state lines include:

---

10. The cases that rely for jurisdiction on any part of the crime occurring within the proper locality are reminiscent of the minimum contacts theory of interstate commerce as expounded in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). At least one federal court has found jurisdiction when none of the elements of the crime occurred within its jurisdiction. *United States v. Brown,* 549 F.2d 954 (4th Cir. 1977), *cert. denied,* 430 U.S. 949 (1977), held that the defendant, stationed in West Germany, could be properly convicted of conspiracy to import heroin through the U.S. Army mails, because his offenses contravened the laws of the United States over which the district court had jurisdiction.

11. D.C. Code (1973), § 11-923 (b) (1) provides: "... the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia." It is unchanged in the 1981 edition of the Code. In *In re A.S.W.,* 391 A.2d 1385 (D.C.C.A. 1978), the court observed in passing that § 11-923 (b) (1) seemed to suggest a geographical limitation on jurisdiction. *Id.* at 1390.

*Arizona* (*State v. Scofield,* 438 P.2d 776, 1968): The court found jurisdiction on the basis that one of the elements of embezzlement — failure to return the leased car — "negatively occurred" in Arizona. *Id.* at 784. The court did not consider where the intent to embezzle was formed, instead relying on the principle enunciated in 21 Am.Jur.2d, § 345, *supra.*

*Arkansas* (*Thomas v. State,* 553 S.W.2d 32, 1977): The defendant argued that the court's refusal to direct a verdict of acquittal on an aggravated robbery charge was error because no element of that crime occurred in Arkansas — all criminal activity was in Oklahoma. The court found that one continuous threat of force was applied by the appellant, beginning when he commandeered the victim's car in Arkansas and culminating in the actual taking of the property. "The force was initiated in Arkansas and extension of the acts into Oklahoma does not defeat Arkansas jurisdiction." *Id.* at 33.

*Indiana* (*Conrad v. State,* 317 N.E.2d 789, 1974): Defendant was tried in Indiana for a murder in which the fatal blows were inflicted in Ohio. The court instructed that the jury had to find the killing "part of one continuous plan, design and intent" that originated in Indiana with the kidnapping and assault of the victim. *Id.* at 791. The Supreme Court of Indiana affirmed, finding that the assault and abduction provided "an adequate jurisdictional base" for appellant's conviction of murder. . . ." *Id.* at 792.

*Michigan* (*People v. Kirby,* 201 N.W.2d 355, 1972): One of the elements of unlawfully driving away an automobile is the driving away, which, the court held, was continuous in nature, thus extending from Indiana, where all the other

elements occurred, into Michigan. The court found that Michigan had jurisdiction to try the offense because part of it occurred within the State. *Id.* at 356-7 and cases cited therein.

*New Jersey* (*State v. Reldan,* 400 A.2d 138, 1979): The court, relying on "the well-established principle that a sovereign has jurisdiction to try an offense where only part of that offense has been committed within its boundaries," concluded that some sort of criminal contact transpired in New Jersey. *Id.* at 141. Both murder victims had been abducted from their homes in New Jersey. Their bodies were found in upstate New York. Ignoring the general presumption that death occurs where the body is found, *see Batdorf, infra,* the court found enough circumstantial evidence to support a reasonable inference that the victims were murdered in New Jersey, and their bodies transported to New York "in an effort to escape this State's jurisdiction." *Id.* at 142.

*North Carolina* (*State v. Batdorf,* 238 S.E.2d 497, 1977): The defendant was convicted of murder but claimed lack of jurisdiction because the killing occurred in some place other than North Carolina on a trip that began in Ohio. The court held that a prima facie showing of jurisdiction — based on the fact that the body and murder weapon were found in North Carolina — was sufficient to take the question to the jury, and adopted the majority rule that the State must prove jurisdiction beyond a reasonable doubt. *Id.* at 502-3.

A number of states have codified the common law rule that the occurrence of essential elements of a crime within the

physical territory of a state is sufficient to give the state jurisdiction. The California Penal Code [12] provides, first, that all persons who commit, in whole or in part, any crime within the state are liable to punishment under the laws of the state, § 27, Subd. 1 and, second, that:

"Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state." § 778 a.

The standard of construction of the statute is set out in *People v. Buffum,* 256 P.2d 317 (Calif. 1963):

"Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature." *Id.* at 321. *See also People v. Utter,* 101 Cal. Rptr. 214 (Ct.App. 1972).

Maryland is, of course, without statutory authority for the exercise of jurisdiction in a criminal case where essential elements of the crime have occurred both within and without the State. However, our study and analysis of the cases decided by the Court of Appeals and this Court lead to the

---

**12.** Other states include: *Alabama,* Horsley v. State, 374 So.2d 363, 369 (1978), Dolvin v. State, 391 So.2d 666, 673-4 (1979); *Arizona,* State v. Duffy, 603 P.2d 538, 543-4 (1979); *Delaware,* Carter v. State, 418 A.2d 989, 991 (1980); *Florida, Cf.* Battle v. State, 365 So.2d 1035, 1037 (1978), Lane v. State, 388 So.2d 1022, 1027 (1980); *Illinois,* People v. Pascarella, 415 N.E.2d 1285, 1289 (1981); *New Hampshire,* State v. Harlan, 364 A.2d 1254, 1259 (1976); *New York,* Steingut v. Gold, 388 N.Y.S.2d 622, 627 (1976), People v. Corsino, 397 N.Y.S.2d 342, 344 (1977); *Pennsylvania,* Commonwealth v. Kloss, 385 A.2d 480, 483 (1978); *Texas,* Roberts v. State, 619 S.W.2d 161, 164 (1981); *Washington,* State v. Swanson, 554 P.2d 364, 370 (1976), *cert. denied,* 434 U.S. 967 (1977). *See also,* Model Penal Code, § 1.03 (Territorial Applicability), American Law Institute, Vol. 1 (1980).

conclusion that common law jurisdiction in such situations is also recognized in Maryland and that the lower court erred in failing to assume jurisdiction in this case.

In the very early case of *Bloomer v. State,* 48 Md. 521 (1878) certain elements of the crime of conspiracy occurred in Pennsylvania, but other acts in furtherance of the conspiracy took place in Maryland. In speaking of the "fields of operations" of conspirators, the Court observed that:

> "[Conspiracies] ... sometimes embrace various States, as the necessities of the conspirators require. Yet the State in which all or any of them reside, and in which the conspiracy originated or was conducted, has ample jurisdiction; otherwise the offense would be committed with impunity." *Id.* at 535.

In an interesting application of the common law, the Court of Appeals in *Worthington v. State,* 58 Md. 403 (1882), sustained an indictment for larceny returned in Washington County when the evidence showed that the goods had been stolen in West Virginia and brought by the defendant into Maryland. Larceny, the Court ruled, "is a crime at common law, and consequently, an offense in every jurisdiction in which the common law is part of the governing law. And, at common law, every asportation is a new taking." *Id.* at 409. The Court turned aside an objection that the miscreant would be subject to punishment in West Virginia as well as in Maryland. *Id.* at 410. *Bartkus v. Illinois,* 359 U.S. 121 (1959); *see Hamilton v. State,* 12 Md. App. 91, 277 A.2d 460 (1971); *Frasher v. State,* 8 Md. App. 439, 260 A.2d 656 (1970).

An early Maryland venue statute, Acts of 1809, ch. 138, § 17, enacted as Code, Art. 27, § 278, was used to find jurisdiction of a homicide where the mortal blow was inflicted in Maryland and death occurred in Pennsylvania. The statute, fixing venue in the county where the mortal blow was struck or poison administered, was held to be declaratory of

common law in *Stout v. State,* 76 Md. 317, 25 A. 299 (1892). Chief Judge Alvey stated for the Court:

> "And if this provision of our Code be simply declaratory of the common law, as we suppose it to be, the same reason and principle equally apply to the case where the mortal blow or poison is given in any county in this State, and the party so stricken or poisoned shall, in consequence of the blow or poison, die out of the State, within the year and a day after the blow given or poison administered, as to the case provided for by the terms of the statute. *In such case it is the law of Maryland that is violated, and not the law of the State where death may happen to occur. By the felonious act of the accused, not only is there a great personal wrong inflicted upon the party assaulted or mortally wounded, while under the protection of the law of the State, but the peace and dignity of the State where the act is perpetrated is outraged; . . .*" (Emphasis added.) *Id.* at 323.

Later Maryland cases have been more specifically concerned with the locus of the elements of the crime charged. Thus, embezzlement may extend over a period of time and acts in furtherance of the offense may take place in several jurisdictions. *Peddersen v. State,* 223 Md. 329, 164 A.2d 539 (1960). The Court emphasized that in embezzlement, as in many crimes, the essential element is intent; "venue may be laid in any county in which the money or property was received with intent to embezzle, or in the county in which the money or property was possessed and the intent to embezzle was formed, regardless of the fact that actual conversion may have taken place in another county *or state.*" (Emphasis added.) *Id.* at 337.

The crime of forgery was involved in *Medley v. Warden,* 210 Md. 649, 123 A.2d 595 (1956), where appellant contended there was no proof that the crimes were committed in Maryland. The defendant travelled from North Carolina to Fairfax, Virginia, with a printing press and

other paraphernalia, and prepared a number of bogus checks in his motel room in Fairfax. They were later endorsed by him and used to make purchases in Annapolis and Baltimore, Maryland.

Holding that the jurisdictional requirement was satisfied by the fact that the offense of uttering occurred where the charges were laid, Judge Henderson, later Chief Judge, wrote for the Court:

> "Jurisdiction over the subject matter may attach where acts are performed in one state with the intention of producing an illegal effect in another, or where the crime is consummated. *State v. Kriss,* 191 Md. 568, 575; *Restatement, Conflict of Laws,* § 65, and § 428. *See also Bloomer v. State,* 48 Md. 521, 535, and *Stout v. State,* 76 Md. 317. It is not a fatal objection that there may be concurrent jurisdiction at the place where the offense is begun. 1 *Wharton, Criminal Law* (12th ed.), § 334." *Id.* at 652.

Similarly in the present case, it is not a fatal objection that the District of Columbia may have concurrent jurisdiction. *See Worthington, supra,* 58 Md. at 410; *Frasher, supra,* 8 Md. App. at 447.

Appellee argues that only the District has jurisdiction of the first degree rape charged in this case, relying on *Goodman v. State,* 237 Md. 64, 205 A.2d 53 (1964). Appellant there was convicted under Art. 27, § 295, Md. Ann. Code (1957, 1966 Cum. Supp., Vol. 3), which provided that no "person shall obtain or attempt to obtain a narcotic drug . . . (1) by fraud, deceit, misrepresentation or subterfuge"; the defendant in *Goodman* obtained in Maryland a doctor's prescription for dilaudid by falsely representing his identity and feigning a kidney ailment. The drugs were purchased in the District of Columbia. The indictment charged that the defendant did "obtain" unlawfully a narcotic drug in Montgomery County. Based upon dictionary definitions of "obtain," the Court concluded that appellant did not obtain the drug until he had possession of it in the District.

On the strength of *Goodman,* appellee urges in his brief that, "where one of the essential elements of a crime took place in the District of Columbia, the fact that the intent to commit that act may have been formed in Maryland is not sufficient to confer subject matter jurisdiction on the State." Of course, the formation in Maryland of the intent to rape the victim in the District cannot be deemed controlling. But the essential element of vaginal intercourse (repeatedly emphasized by appellee) is not the only proscribed act in first degree rape, as was the obtention of drugs in *Goodman.* It was one of several essential elements specified in the rape statute, *supra.*

Similarly, appellee's reliance on *Urciolo v. State,* 272 Md. 607, 325 A.2d 878 (1974) and *Bowen, supra,* is misplaced. In *Urciolo,* a District of Columbia attorney was convicted of embezzlement arising out of the conversion of partial proceeds from a real estate settlement involving a tract of land in Anne Arundel County, Maryland. The Court of Appeals, applying *Peddersen, supra,* found a lack of jurisdiction because none of the elements of the crime occurred in Maryland. Although appellant might have had a "transitory intent" to convert, there was no receipt nor possession of the check in Maryland; the "only act of appropriation was the appellant's overt and explicit act of conversion within the District of Columbia."

The *Bowen* case involved the conviction of the President of a title company in Montgomery County on charges of larceny after trust and embezzlement. The checks which formed the basis of the entrusted funds were received in Bethesda, Maryland, and deposited in the Security Bank in the District of Columbia. Reversing the convictions because of lack of jurisdiction, the Court of Appeals assumed, without deciding, that jurisdiction in embezzlement lies where the intent is formed, and found that there was insufficient evidence of intent to embezzle at appellant's Bethesda office where the checks were received. The Court also stated that the essential element in larceny after trust is the conversion, and conversion is a single offense, complete in itself. "In the instant case, the checks were deposited

in the District of Columbia, were paid in the District of Columbia, and the money was withdrawn in the District of Columbia. We are, therefore, of opinion that the Circuit Court for Montgomery County had no jurisdiction in this case." 206 Md. at 379. Thus, for all practical purposes, the entire crime in *Bowen* occurred in the District of Columbia and, for aught that it avails appellee, the *Bowen* case is a veritable slender reed.

In our view of Maryland law, it is not essential to criminal responsibility that the accused perform every act necessary to accomplish the crime within the geographical confines of Maryland. We find nothing in the decided cases of the Court of Appeals which would militate against the proposition succinctly stated by the Supreme Court of Vermont in *State v. Harrington*, 260 A.2d 692, 697 (1969), *supra*, n.8:

> "Where the crime is composed of an interstate series of acts, it is jurisdictionally competent for a state to attach legal consequences to any overt act committed within its boundaries, even though the final impact and injury may occur elsewhere."

The lower court, ruling on appellee's motion, appears to have considered only the element of vaginal intercourse occurring in the District of Columbia;[13] and this was analogized to the homicide in *State v. Hall*, 19 S.E. 602 (1894), which occurred in a shooting incident across state lines.[14] As previously stated, the new Maryland statute

---

**13.** During oral argument on appellee's motion to dismiss, Judge Fairbanks remarked: "You [the State] can show everything but the actual rape." His judgment was apparently based on the premise that the place where the crime is consummated is the place where defendant may be tried. Absent a statute conferring extra-territorial jurisdiction, he held, "Maryland has no jurisdiction to try a Defendant for first degree rape where the actual consummation occurred outside the [state]."

**14.** In *Hall*, the accused in North Carolina shot and killed the victim in Tennessee. North Carolina refused to assert jurisdiction because the fatal force took effect in Tennessee. One year after *Hall*, North Carolina enacted a statute to give the courts jurisdiction in *Hall*-type cases. Under *Stout*, *supra*, the mortal blow theory would permit jurisdiction over *Hall*-type cases in the state where the blow was inflicted, presuming, of course, that the act of shooting the gun is the equivalent of inflicting the blow. *See* n.6, *supra*.

which defines first degree rape includes essential elements which, according to the stipulated facts, occurred in Maryland. These overt acts were sufficient to give the court jurisdiction to try the appellee for first degree rape. Of course, territorial jurisdiction represents a factual question for the jury to resolve with appropriate instructions and the State has the burden of proof beyond a reasonable doubt. *See* Annot., 67 A.L.R.3d § 10 at 1004 (1975). *See also, Batdorf, supra; Conrad, supra;* and *Lane v. State,* 388 So.2d 1022 (Fla. 1980).

> *Order granting motion to dismiss Count I of the indictment reversed; case remanded for trial on charge of first degree rape; appellee to pay the costs.*